**MIDAMERICAN BANK & TRUST COMPANY, Respondent,**

v.

**Charles R. HARRISON, Appellant.**

**No. WD 46137.**

Missouri Court of Appeals,
Western District.

Feb. 23, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 30, 1993.

Application to Transfer Denied
May 25, 1993.

John M. Kilroy, Jr., Kansas City, for appellant.

Richard W. Miller, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and
TURNAGE and SPINDEN, JJ.

TURNAGE, Judge.

MidAmerican Bank and Trust Company filed suit against Charles R. Harrison, a certified public accountant, for damages arising out of negligent misrepresentation in a financial statement and audit prepared by Harrison for Associated Photographers, Inc. The jury returned a verdict in favor of Harrison. MidAmerican filed a motion for new trial which the court sustained. On appeal, Harrison contends the trial court erred in granting a new trial because MidAmerican failed to make a submissible case. Reversed and remanded.

Harrison is a certified public accountant licensed in the State of Missouri who prepared annual financial statements for Associated Photographers from 1970 through 1985. According to Harrison, the statements were prepared only for the benefit of Associated's lender, Boatmen's Bank, and Kodak, Associated's major supplier of equipment and materials.

In 1974, Associated received insurance proceeds to replace photographic printers destroyed in a fire. Associated elected not to report the insurance proceeds as taxable income and it was consequently prohibited by the Internal Revenue Code from deducting the depreciation for the new printers. In view of this prohibition, the depreciation was not reflected on Associated's financial statements prepared by Harrison.

In 1985, Associated requested a loan from MidAmerican Bank without Harrison's knowledge. In support of its loan request, Associated presented its financial statements prepared by Harrison to MidAmerican. Harrison was unaware that the financial statements he had prepared would be provided to MidAmerican. MidAmerican initially rejected the loan request, but subsequently agreed to reconsid-

er if Associated would provide an independent appraisal to support the market value of its assets. After receiving such an appraisal, which was not prepared by Harrison, MidAmerican approved loans to Associated in June of 1985 that totalled approximately $1.6 million.

Soon after MidAmerican had approved the loan, Associated reported substantial losses. In August and September of 1986, the accounting firm of Arthur Young performed a review of Associated's books at the request of MidAmerican which revealed a depreciation error on Associated's financial statements. On the basis of that report, MidAmerican now claims that Associated's assets were substantially overstated on the financial statements prepared by Harrison. The bank alleged that it relied on Harrison's financial statements in making the loan but such statements were inaccurate because they failed to show depreciation on the new printers.

As a result of its deteriorating financial condition, Associated was eventually sold. In December 1989, MidAmerican filed this suit against Harrison for negligent misrepresentation.[1] Following a jury verdict for Harrison, MidAmerican filed a motion for new trial. The court sustained the motion on the ground that it had denied MidAmerican a fair trial because of comments the court made to MidAmerican's counsel[2] and Harrison appealed.

On appeal, Harrison contends that the trial court erred in granting a new trial because MidAmerican failed to make a submissible case of negligent misrepresentation. A plaintiff must make a submissible case before a new trial can be granted. *Community Title Co. v. Roosevelt Federal Sav. & Loan Ass'n*, 796 S.W.2d 369, 371 (Mo. banc 1990).

The elements for negligent misrepresentation are:

(1) that defendant supplied information in the course of his business or because of some other pecuniary interest;

(2) that because of a failure by defendant to exercise reasonable care or competence, the information was false;

(3) that the information was intentionally provided by defendant for the guidance of a limited group, including plaintiffs, in a particular business transaction; and

(4) that in relying on the information, plaintiffs suffered a pecuniary loss.

*Mark Twain Plaza Bank v. Lowell H. Listrom & Co.*, 714 S.W.2d 859, 865 (Mo.App. 1986).

■ Although Missouri courts recognize a theory of recovery for negligent misrepresentation, liability is limited to the "narrow confines" of § 552 of the Restatement (Second) of Torts. *Id.* at 865. Section 552(2) Restatement provides that liability for negligent misrepresentation is limited to loss suffered:

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The states are generally divided three ways with regard to the issue of accountant liability to third parties with whom the accountant is not in privity. *First Nat'l Bank of Commerce v. Monco Agency Inc.*, 911 F.2d 1053, 1058 (5th Cir.1990). The restrictive minority view is endorsed by New York and holds accountants liable to nonclients only if (1) "the accountants actu-

1. Although claims for breach of contract were also included in the original suit against Harrison, all claims except for negligent misrepresentation were dismissed.

2. In the order granting a new trial the court expressed the view that MidAmerican had not made a submissible case but stated that issue was not before it. The statement that the issue

of submissibility was not before the court is in error. If a plaintiff failed to make a submissible case, an order granting a new trial must be reversed. *Community Title Co. v. Roosevelt Federal Sav. & Loan Ass'n*, 796 S.W.2d 369, 371 (Mo. banc 1990). Thus, the trial court was not authorized to grant a new trial if it found MidAmerican failed to make a submissible case.

ally know that their financial reports are to be used for a particular purpose"; (2) "the accountants must actually know that a nonclient is expected to rely upon the financial reports in furtherance of a particular purpose"; and (3) "there must be some conduct, on the part of the accountants, that links them to the nonclient and evinces the accountant's understanding of the third party's reliance upon the audit." *Id.*

A second view endorsed by a small group of states including New Jersey and California expands liability. *Id.* at 1059. These states hold accountants liable "to the extent that damages incurred by nonclients are reasonably foreseeable." *Id.* Under this theory, liability would extend to foreseeable nonclients such as investors and commercial lenders. *Id.*

The third view is the Restatement (Second) of Torts § 552 which takes the moderate position "allowing only a restricted group of third parties to recover for pecuniary losses attributable to inaccurate financial statements." *Id.* The Restatement represents the majority view and is endorsed by several states including Missouri. *Id.* at 1060 (citing *Mark Twain Plaza Bank v. Lowell H. Listrom & Co.*, 714 S.W.2d 859 (Mo.App.1986)). While the Restatement view allows liability in limited cases where the accountant is not in privity with the third party, liability is not extended to "every reasonably foreseeable consumer of financial information." *Id.* at 1060.

The case at bar is remarkably similar to *Monco*, in which the court applied § 552 of the Restatement. In *Monco*, the court granted summary judgment for accountants who had prepared financial statements for Monco knowing that one bank would rely on the information, but not knowing that a second bank would rely on the audited statements in extending a loan. The bank argued that the accountants needed only to have possessed "constructive knowledge that the bank would rely upon the ... audit in a commercial transaction to follow." *Id.* at 1061. In rejecting this argument that the accountants "should have known" their financial statements

would be relied upon by others in subsequent business transactions, the *Monco* court held:

> The Restatement expressly limits liability to a select group of nonclients who the misinformer actually knows will receive inaccurate information principally because the misinformer knows that the client will channel the work product to that restricted group. Additionally, the misinformer must know that its client intends to use the inaccurate information to influence a particular business transaction, or a 'substantially similar transaction,' to follow. *Id.* at 1061.

In rejecting the notion that all "potential lenders" of Monco constituted a "limited group" of informational recipients under the Restatement, the court further held that:

> Anything less than actual knowledge ... would extend liability to the bounds of 'reasonable foreseeability,' similar to that in New Jersey.... We conclude, therefore, that the Restatement requires actual knowledge on the part of accountants of the limited—though unnamed—group of potential lenders that will rely upon the inaccurate ... audit, as well as actual knowledge of the particular financial transaction that such information is designed to influence. *Id.* at 1062.

As noted in *Monco*, Illustration 10 under § 552, comment h reinforces the court's finding that an accountant must have actual knowledge of the identities—even of an unnamed group of potential lenders—that will rely upon the accountant's financial statements.

## ILLUSTRATION 10

A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are customarily used in a wide variety of financial transactions by the corporation and that

they may be relied upon by lenders, investors, shareholders, creditors, purchasers and the like, in numerous possible kinds of transactions. In fact B company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.

In this case, MidAmerican claims that it qualifies as a member of a "limited class" which Harrison knew would be supplied with the statements prepared by him and therefore liability should be extended to include MidAmerican. MidAmerican contends that not only could Harrison have foreseen the harm to MidAmerican, he knew that lenders such as MidAmerican would rely on his representations. MidAmerican did not introduce any evidence to demonstrate that Harrison had actual knowledge that Associated was negotiating a loan transaction with the bank or that his financial reports would be given to MidAmerican. Harrison testified that he had no such knowledge when the statements were prepared.

MidAmerican is basically requesting this court to extend liability to potential lenders whose reliance on Harrison's financial statements is foreseeable. This is tantamount to saying that Harrison should have known that MidAmerican or other lenders would rely on the financial reports and such a position falls more within the "reasonable foreseeability" view followed by New Jersey and California as noted in *Monco*, rather than the Restatement view adopted by Missouri. Absent evidence that Harrison possessed the requisite knowledge as provided in the Restatement, MidAmerican has not made a submissible case.

█ There is a further reason the grant of a new trial cannot be sustained on the ground assigned by the trial court. MidAmerican contended it had been prejudiced by remarks made by the trial court during trial. After counsel complained to the court about being "dressed down" by the court, the court stated it would tell the jury to disregard the remarks made by the court. When the jury returned the court told them to disregard its remarks. Counsel did not request any other relief and no further objection was made until MidAmerican raised the issue in its motion for new trial. The situation is the same as the failure to request further relief after an objection has been sustained. In that instance the failure to request further relief is deemed to be a waiver or abandonment to seek further relief. *McMillin v. Union Elec. Co.*, 820 S.W.2d 352, 355[6, 7] (Mo. App.1991). Here MidAmerican's counsel waived the right to request further remedial action, such as a new trial, when he failed to request further relief after the court instructed the jury to disregard its remarks. *McMillin* further held that a party cannot wait to evaluate the impact of evidence on a jury without waiving the right to request further relief. *Id.* Here, counsel waited until after the jury verdict to request the additional relief of a new trial. The right to request additional relief was waived and MidAmerican was not entitled to a new trial for the comments made by the court.

Because MidAmerican failed to make a submissible case, the judgment granting a new trial is reversed and this cause is remanded to the trial court with directions to enter judgment on the verdict in favor of Harrison.

All concur.