625 So.2d 1007 (1993)
Judy Barrie, Wife of/and Michael H. BARRIE
v.
V.P. EXTERMINATORS, INC., Vincent Palumbo, The XYZ Insurance Company, and Secor Bank, a Federal Savings Bank.
No. 93-C-0679.
Supreme Court of Louisiana.
October 18, 1993.
Rehearing Denied November 18, 1993.
*1008 John A.E. Davidson, Metairie, for applicants.
John W. Waters, Jr., New Orleans, for respondents.
ORTIQUE, Justice[1]
At issue is whether the lower courts erred in finding the petition of plaintiffs, purchasers of a dwelling, fails to state a cause of action in tort against the termite inspector who issued a wood destroying insect report to the vendor of the dwelling in prospect of the sale, when the inspector knew the report would be given to them, the prospective purchasers to facilitate the sale, and its contents which allegedly negligently concluded the premises had "no physical evidence of active and/or old infestation from subterranean termites," would influence their decision to purchase, when they suffered pecuniary loss as a result. The trial court sustained the peremptory exceptions of no cause of action filed by the termite inspector, his company and his insurer. Their motions for summary judgment, dismissing plaintiffs' suit as to them, were also granted. The appellate court affirmed, indicating plaintiffs' action for negligent misrepresentation could not lie against these defendants because there was no privity between them.
We granted certiorari to determine whether a termite inspector has a duty to exercise reasonable care and competence in obtaining and communicating information in a termite inspection report, so as to protect third persons for whose benefit and guidance the information was sought and supplied, and who may detrimentally rely on its contents thereby suffering pecuniary loss. We conclude Louisiana law provides such a duty. Our general tort principles provide a cause of action against a termite inspector who, in the course of his business, allegedly fails to exercise reasonable care, competence or skill in ascertaining facts and/or in communicating the facts or opinion in a termite inspection report which was contracted for and supplied to another, a vendor, to facilitate a sale of real estate, in favor of the purchasers of the property who suffered foreseeable pecuniary loss because they detrimentally relied upon the contents of the report, even though the purchasers are not a party to the contract and have had no direct or indirect contact with the termite inspector, when the termite inspector supplied it to facilitate the sale so as to make the purchasers intended users of the report. Therefore, we reverse. The judgments of the lower courts are vacated and the case remanded to the trial court for further proceedings in keeping with the legal principles set forth herein.

I.
Judy and Michael H. Barrie filed suit to rescind the sale of the dwelling they purchased and for damages against Secor Bank ("Secor"), the vendor of the dwelling, and V.P. Exterminators, Inc. ("V.P."), V.P.'s owner/employee Vincent Palumbo ("Palumbo") and its insurance company, XYZ Insurance Company ("XYZ"), the person and entities responsible for the issuance of a "wood destroying insect report" prior to and connected with the sale.
The Barries' petition claims defendants are jointly liable for the damages they sustained when they purchased from Secor a multiple-family dwelling located at 32-32A-34 Orpheum Avenue in Metairie after V.P. issued a negative wood destroying insect report. Specifically, the Barries' petition asserts that, through Secor's real estate agent, they entered into an agreement to purchase the dwelling on Orpheum, subject to the condition that vendor was to provide a "termite certificate showing free and clear;" Secor employed V.P. to perform the termite inspection in compliance with the agreement to purchase; Palumbo, employee, agent and/or *1009 owner of V.P., issued a "wood destroying insect report" indicating there was no physical evidence of active and/or old infestation from subterranean termites; and, based on this representation, they purchased the dwelling from Secor by act of sale passed on September 14, 1990. The Barries' petition additionally asserts that, within three days, on September 16, 1990, "extensive termite damage was found in one of the walls of the premises;" subsequent termite inspections revealed extensive old and active damage from termite infestation; and the dwelling is unfit for habitation and resale due to redhibitory vices which plaintiffs were not able to ascertain due to the location and hidden nature of the damage. The petition asserts these redhibitory vices were peculiarly within the knowledge of the defendants who inspected the property for defects prior to the act of sale and certified it as being free and clear of termite damage. They claim the termite inspector was negligent in misrepresenting the condition of the premises to them in the pre-sale inspection report.
Secor answered the Barries' petition[2] and cross-claimed V.P., Palumbo and their insurer, requesting indemnification if it is held liable on the main demand.[3] V.P. and Palumbo answered the Barries' petition and Secor's cross-claim, specifically pleading as a defense the terms and conditions of its contract with Secor.
Plaintiffs' first amending petition named Scottsdale Insurance Company ("Scottsdale") in place of XYZ. Prior to answering the amended petition, Scottsdale filed a pleading containing the dilatory exception of prematurity, the peremptory exception of no cause of action[4], and a motion for summary judgment. Scottsdale also filed a peremptory exception[5] and a motion for summary judgment in defense of the claims against V.P. and Palumbo. The grounds for the exceptions and motions were founded, first, on the lack of a contractual relationship and privity *1010 between the Barries and V.P./Palumbo obviating any cause of action in contract; and, second, on the Barries' alleged failure to comply with a boilerplate provision on the back of the wood destroying insect report requiring the property to be inspected by the Louisiana Structural Pest Control Commission to verify their complaint prior to filing suit. Defendants further urged that, as V.P. provided inspection service only and did not cause any of the termite damage, no cause of action could lie against them in tort. In support of their motion, defendants submitted a copy of the wood destroying insect report.
The Barries' conceded that their petition does not allege contract claims against V.P. and Palumbo.[6] However, in opposition to defendants' defensive pleading they argued their petition sets forth a cause of action in tort through allegations of negligent inspection and negligent misrepresentation. They also contended summary judgment was inappropriate as genuine issues of material fact exist on the tort issues.
Without providing written reasons, the trial court sustained the exceptions of no cause of action and granted the motions for summary judgment, dismissing the suit as to V.P., Palumbo and Scottsdale. The Barries filed a motion for new trial, urging in the alternative that if there was a basis for sustaining the objection of no cause of action, they should have been allowed to amend their petition, LSA-C.C.P. art. 934. Accordingly, they submitted a second supplemental and amending petition.[7] Their motion for new trial was denied.
The Barries devolutively appealed. The court of appeal affirmed, Barrie v. V.P. Exterminators, Inc., 614 So.2d 295, 296 (La. App. 4th Cir.1993), concluding plaintiffs have no contractual cause of action against the three defendants because they are not parties to the Secor-V.P. contract and, for the same reason, have no contractual cause of action for detrimental reliance under LSA-C.C. art. 1967[8]. It further concluded they have no cause of action for negligent misrepresentation because they did not assert facts establishing a direct relationship with V.P./Palumbo since they are third-parties to the contract and/or did not directly communicate with defendants. 614 So.2d at 296-297. The dissenting judge found the "lack of a relationship" between the Barries and V.P./Palumbo totally irrelevant to their tort action. He commented that Louisiana and common law jurisprudence allows recovery by any injured party where it is reasonable for the tortfeasor to foresee that his acts might cause damage to that specific party, *1011 and to foresee that plaintiff would rely on his representations. 614 So.2d at 298. Due to the prevalence of consumer reliance on wood destroying insect reports in real estate transactions, we granted certiorari on the Barries' application, 617 So.2d 902 (La.1993), to determine whether a termite inspector has a duty to exercise reasonable care and competence in obtaining and communicating information in a wood destroying insect report, so as to protect third persons for whose benefit and guidance the information was sought and supplied, even though privity and direct or indirect contact are lacking, because their anticipated use of its contents makes their pecuniary loss a foreseeable probability.

II.
The common law tort of misrepresentation is generally separated into three tort classifications: intentional, negligent, and strict liability. Prosser and Keeton, The Law of Torts, § 107, p. 745 (5th ed. 1984). Pertinent to this case is the classification of negligent misrepresentation, specifically, representations made in the course of rendering service pursuant to a contract, when made with an honest belief in its truth, but because of lack of reasonable care or an absence of skill or competence in ascertaining the facts or making the opinion, and/or in the manner of communicating the facts or opinion, the representation causes economic loss to be suffered by a third party, but an intended user of the information, who relies on the information to their detriment. See Id., pp. 745, 746. It is distinguished from actions for intentional fraud or deceit, warranty actions and actions were plaintiff has suffered physical harm.
The first significant common law decision on negligent misrepresentation was Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922), a case in which Justice Benjamin Cardozo held a public weigher liable to a buyer of beans for an erroneous weight statement which had been contracted by the seller of the beans. The weigher was found to owe a duty to the buyer, a third party to the contract, because he knew the buyer would rely on the weight statement. Cardozo set forth the weigher's obligation to the buyer of the beans in the following passage:
We think the law imposes a duty toward buyer as well as seller in the situation here disclosed. The plaintiffs' use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction. [The seller] ordered, but Glanzer Brothers [buyers] were to use. The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiffs for the very purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh it carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law. 135 N.E. at 275-276. (emphasis added)
Cardozo stated the defendants were liable "not merely for careless words ... but for the careless performance of a servicethe act of weighingwhich happens to have found in the words of a certificate its culmination and its summary." 135 N.E. at 276. He further surmised, "[c]onstantly the bounds of duty are enlarged by the knowledge of a prospective use." 135 N.E. at 276.
Subsequently, in Ultramares Corporation v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), Justice Cardozo fixed limitations on the tort action which he had recognized in Glanzer. The issue in Ultramares was whether CPA auditors should be liable to third parties who read and relied upon an audit report (certified balance sheet) prepared pursuant to a contract between the CPA firm and the company audited, Fred Stearn & Co., Inc. Fearing unlimited liability of accountants who failed "to detect theft or forgeries beneath the cover of deceptive entries," whereby the accountant would suffer liability of "an indeterminate *1012 amount for an indeterminate time to an indeterminate class,"[9] Cardozo denied recovery to a third party who had loaned money based upon the negligently prepared audit (an "honest blunder") due to the absence of a relationship with defendant which is now described as one "akin to privity."
The auditor in Ultramares delivered thirty-two copies of its audit to Stearn, which implied that others besides Stearn would read or use the audit. But at the time the audit was delivered, the plaintiff had no real dealings with Stearn and, therefore, the auditor did not know the plaintiff would detrimentally rely on the audit. Discussing his earlier case of Glanzer and comparing it to his present case in which he found no duty owed to the third party, Cardozo wrote:
Here [in Glanzer] was something more than the rendition of a service in the expectation that the one who ordered the certificate would use it thereafter in the operations of his business as occasions might require. Here was a case where the transmission of the certificate to another was not merely one possibility among many, but the "end and aim of the transaction," as certain and immediate and deliberately willed as if a husband were to order a gown to be delivered to his wife, or a telegraph company, contracting with the sender of the message, were to telegraph it wrongly to the damage of the person expected to receive it. (cites omitted) The intimacy of the resulting nexus is attested by the fact that, after stating the case in terms of legal duty, we went on to point out that viewing it as a phase or extension of [two cases] we could reach the same result by stating it in terms of contract. (cites omitted) The bond was so close as to approach that of privity, if not completely one with it... In a word, the service rendered by the defendant in Glanzer v. Shepard was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the promisee. In the case at hand, the service was primarily for the benefit of the Stearn Company [a party to the contract], a convenient instrumentality for use in development of the business, and only incidentally or collaterally for the use of those to whom Stearn and his associates might exhibit it thereafter. Foresight of these possibilities may charge with liability for fraud. The conclusion does not follow that it will charge with liability for negligence. 174 N.E. at 445-446. (emphasis added)
Despite Cardozo's "assault on the citadel of privity" by recognizing a tort duty owed under certain circumstances to a third party to a contract who relies on negligent misinformation, some states have continued to adhere to the traditional common law view that economic losses cannot be recovered in tort in the absence of privity of contract. See John Martin Co., Inc. v. Morse/Diesel, Inc., 819 S.W.2d 428, 435, n. 3 (Tenn.1991); Prosser and Keeton, § 107. Nevertheless, in the states which recognize a tort duty where privity is absent, three standards[10] have developed since the venerable Justice Cardozo authored these two hallmark cases: the "akin to privity" view, the foreseeability view and the Restatement (2d) of Torts § 552 view. MidAmerican Bank & Trust Co. v. Harrison, 851 S.W.2d 563, 565 (Mo.App.W.D.1993); Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 843 P.2d 890, 908 (Or.1992) (Unis, J., dissenting); Bethlehem Steel Corp. *1013 v. Ernst & Whinney, 822 S.W.2d 592 (Tenn. 1991); First National Bank of Commerce v. Monco Agency Inc., 911 F.2d 1053, 1058 (5th Cir.1990).
The "akin to privity" view is the restrictive minority view. It extends liability for economic loss only to those persons with whom defendant is in a relationship "akin to privity." Onita Pacific Corp. v. Trustees of Bronson, 843 P.2d at 908. It is the Ultramares rule as modified by Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), wherein a tripartite rule[11] was established for determining a defendant's liability, which includes some "linking conduct" on the part of defendants. See First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1058; MidAmerican Bank & Trust Co. v. Harrison, 851 S.W.2d at 564-5; Bily v. Arthur Young & Co., 3 Cal.4th 370, 11 Cal. Rptr.2d 51, 834 P.2d 745, 754 (Cal.1992). The rule defines and limits the scope of the defendant's duty according to the defendant's state of mind and the agreed upon expectations of the parties of the underlying contract. Onita Pacific Corp. v. Trustees of Bronson, 843 P.2d at 908.
The foreseeability view is an expansive view because it allows recovery to third parties "to the extent that damages incurred by non-clients are reasonably foreseeable." See MidAmerican Bank & Trust Co. v. Harrison, 851 S.W.2d at 565; First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1058. Liability under this rule extends to all reasonably foreseeable plaintiffs who, as a result of their actual and justifiable reliance on negligently made representations, suffer economic damages. Onita Pacific Corp. v. Trustees of Bronson, 843 P.2d at 908 (dissent). It dispenses with privity notions altogether. First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1058-1059. At least three states have endorsed this view. Id., at n. 5; First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1058, n. 9.
The Restatement (2d) of Torts § 552 view[12] is considered a majority rule as it has been embraced by at least nineteen states. First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1060. It is an adaptation of Glanzer's intended beneficiary doctrine. See Guardian Const. Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378, 1383 (Del.Super.1990). Section 552 allows a restricted group of third parties to a contract to recover for pecuniary losses attributable to misinformation. MidAmerican Bank & Trust Co. v. Harrison, 851 S.W.2d at 565; First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1059; John Martin *1014 Co., Inc. v. Morse/Diesel, Inc., 819 S.W.2d 428, 432 (Tenn.1991); First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9, 15 (Fla.1990). Where the "akin to privity" rule requires that the precise identity of the informational consumer be foreseen by defendants, "the Restatement contemplates identification of a narrow group, not necessarily the specific membership within that group." First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1059. The view expressly limits liability to a select group of non-clients who the misinformer actually knows will receive inaccurate information principally because the misinformer knows the client will channel the work product to that restricted group. Id., at 1061. Direct communication of the information from the misinformer to the person acting in reliance upon it; therefore, is not necessary. § 552, comment G. The misinformer need only know its client intends to use the inaccurate information to influence a particular business transaction, or a "substantially similar" transaction to follow. First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1061; § 552, comment J. It is not required that plaintiff be identified or known to the misinformer as an individual when the information is supplied. § 552, comment H.

III.
Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation where privity of contract is absent. Pastor v. Lafayette Bldg. Ass'n, 567 So.2d 793 (La.App. 3d Cir.1990); Payne v. O'Quinn, 565 So.2d 1049 (La.App. 3d Cir.1990); Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So.2d 1157 (La.App. 3d Cir.1988), writ den., 530 So.2d 570 (La.1988). Thus far, the tort theory has developed case by case. Our courts have not subscribed to any one of the three common law standards. See Section II, supra.
The seminal Louisiana case on the topic, Devore v. Hobart Mfg. Co., 367 So.2d 836, 839 (La.1979), acknowledged that LSA-C.C. arts. 2315[13] and 2316[14] are sufficiently broad to encompass a cause of action for negligent misrepresentation. While Devore recited Restatement (2d) of Torts § 552 in a footnote when recapitulating the arguments urged by the plaintiff, it did not adopt the Restatement's view. The holding in Devore, nevertheless, was consistent with the Restatement (and the other two common law standards) as defendant was found to have no affirmative duty to supply correct information merely from gratuitously providing plaintiff with requested information.[15]See § 552, comment *1015 C. The misinformer, the Rapides Parish School Board through its Director of Food Services, had no pecuniary interest in supplying the plaintiff with the requested information. An affirmative duty to supply correct information did not arise merely by gratuitously providing plaintiff with the information requested, especially as plaintiff had not alleged defendants had actual knowledge of the intended use of the information or defendants had exclusive control over the information. 367 So.2d at 839.
Since Devore, the bulk of Louisiana's jurisprudence generating the negligent misrepresentation tort theory has been cases with contract or fiduciary relationships between plaintiff and defendant, rather than cases with a third party who relied on the misinformation. See Ernestine v. Baker, 515 So.2d 826 (La.App. 5th Cir.1987); Dousson v. South Central Bell, 429 So.2d 466 (La.App. 4th Cir.1983), writ den., 437 So.2d 1135 (La. 1983); Beal v. Lomas and Nettleton Co., 410 So.2d 318 (La.App. 4th Cir.1982); Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir. 1982), writ den., 427 So.2d 870 (La.1983). Consequently, there are only a few cases involving non-clients or third parties who were intended users of the misinformation. Pastor v. Lafayette Bldg. Ass'n, supra; Payne v. O'Quinn, supra; Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc., supra.
The approach of the appellate courts in the negligent misinformation cases has been to integrate the tort doctrine into the duty/risk analysis. They conclude, for the cause of action to arisewhether plaintiff is a third party or a party to the contract or transactionthere must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage. See Cagle v. Loyd, 617 So.2d 592 (La.App. 3d Cir.1993), writ den., 620 So.2d 877 (La.1993); Pastor v. Lafayette Bldg. Ass'n, supra; Payne v. O'Quinn, supra; Josephs v. Austin, supra; Beal v. Lomas and Nettleton Co., supra; Braydon v. Melancon, 462 So.2d 262 (La.App. 1st Cir. 1984); Mills v. Ganucheau, 416 So.2d 361 (La.App. 4th Cir.1982). This case by case employment of the duty/risk analysis is the appropriate standard in this state for determining legal responsibility for negligent misrepresentations. See Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
Whether a duty is owed is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d at 1371. Where there is privity of contract or a fiduciary relationship, our appellate courts have found a duty owed to the tort victim under factual scenarios of both non-disclosure and misinformation. For example: Ernestine v. Baker, supra [realtor has a duty to disclose to purchasers defects of which he has knowledge]; Braydon v. Melancon, supra [realtor has a duty to relay accurate information concerning the property]; Dousson v. South Central Bell, supra [under § 552 of the Restatement, SCB had a tort duty to exercise reasonable care when it informed Plaintiff of the steps necessary to obtain the same telephone number of a service station he was purchasing]; Woods v. Integon Life Ins. Corp., 507 So.2d 259 (La. App. 3d Cir.1987), writ den., 512 So.2d 461 (La.1978) [insurer had duty to supply correct information which was breached when insurer failed to inform the prospective insureds that it converted their joint application into an individual application for the wife only]; Josephs v. Austin, supra [realtor has a duty to relay accurate information since both vendor and vendee rely on his honesty, access to information, knowledge and expertise]; Beal v. Lomas and Nettleton Co., supra [mortgagee, who collected insurance premium from mortgagor, has a duty to correctly convey information to mortgagor on the substitution of one insurer's policy for another with respect to new coverage].
More pertinently, in cases where privity of contract is absent but there is communication of the misinformation by the tortfeasor directly to the user or the user's agent, they have also found the user is owed a tort duty. See Payne v. O'Quinn, 565 So.2d at 1054 *1016 [where termite inspector delivered a wood destroying insect report to the realtor representing both vendor and vendee (under the assumption that the exterminator had no contractual relationship with vendee), held: the exterminator "assumed a duty to insure the information it provided as part of its stated obligation as well as that which it volunteered to provide was correct. Furthermore, that duty encompassed the risk that a prospective purchaser (Payne) would rely upon the misrepresentation provided to the realtor, and suffer the damages sustained."]; Pastor v. Lafayette Bldg. Ass'n, 567 So.2d at 796 [where a second mortgagee sued the first mortgagee in connection with the subordination of an additional amount at the time of the sale of the property, held: the first mortgagee had no duty to supply any information to the second mortgagee, a non-client; however, "once it volunteered the information [directly to plaintiff], it assumed a duty to insure that the information volunteered was correct."]; Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So.2d at 1162 [when bank wrote to plaintiff, a non-customer, stating clearly that the financial condition of one of the bank's customers to whom it had extended credit was not in jeopardy, held: the bank "assumed a duty to insure that the information volunteered was correct"].[16]
In sum, Louisiana's case by case development of the tort of negligent misrepresentation has not been restricted to a set theory. It has been broadly used to encompass situations of non-disclosure in fiduciary relationships, to situations of direct disclosure to non-clients. Adopting one of the common law standards as the sole method for determining liability for this tort is not necessary. The case by case application of the duty/risk analysis, presently employed by our courts, adequately protects the misinformer and the misinformed because the initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm.

IV.
The scope of the duty that V.P. and its owner/agent/employee, Palumbo, owed to the Barries was to use reasonable care and competence in obtaining or ascertaining facts for and/or in communicating the facts or opinion in the wood destroying insect report. The duty was owed to the Barries even though they were a third party to V.P., without privity of contract or direct or indirect contact, because they were known to V.P. as the intended users of the report. The Barries were members of the limited group for whose benefit and guidance the report was contracted and supplied. V.P. owed the duty to the Barries because of its knowledge that the ultimate purpose for the report, and its employment, was to facilitate the sale of the dwelling it inspected. The Barries' expected use of the report made the magnitude of their loss a foreseeable probability. The obligation for the liability is imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user. See Glanzer v. Shepard, supra. The duty of care owed by V.P., encompassed by LSA-C.C. arts. 2315 and 2316, is compatible with the one stated in the Restatement (2d) of Torts, § 552. Liability is not confined by the limitations of the third-party beneficiary/stipulation pour autrui contact theory.[17]See LSA-C.C. art. 1978 et seq.
V.P. was manifestly aware of the use to which Secor would put the wood destroying insect report. See § 552, comment A. Like the situation in Justice Cardozo's Glanzer, the Barries' use of the termite inspection report was "not merely one possibility among many, but the end and aim of the [Secor-V.P.] *1017 transaction." See and compare Ultramares Corporation v. Touche, 174 N.E. at 445. Moreover, V.P. intended to supply it for that purpose. The concerns evoked in Ultramares, the fear of liability with indeterminate limits of amount, time and class, were not present. Palumbo's knowledge of the intended use of the report, enlarged his duty to perform his service carefully, not only for the vendor who ordered the report, but for the vendee who was to use it.[18]See Glanzer v. Shepard, supra.
Unlike the plaintiff in Devore who was owed no duty, V.P. did not perform its services gratuitously. Palumbo gathered and conveyed the information in the context of a business transaction for which V.P. received compensation. See § 552, comment C, D. Thus, in contrast to the school board in Devore which undertook only the general obligation of honesty when it gratuitously provided the plaintiff the requested information, due to V.P.'s pecuniary interest in supplying the information, the duty arose to exercise reasonable care and competence in obtaining the information for the wood destroying insect report and communicating it to the intended users, which group included the Barries. See § 552, comments A, D, E.
For V.P. and Palumbo to be obligated in tort to the Barries, it was not necessary for the Barries to employ V.P., or for Palumbo to directly communicate with them or indirectly communicate with them through their agent. See § 552, comments G, H. Cf. Strickland v. Rossini, 589 So.2d 1268 (Miss. 1991) [a factually comparable termite inspection liability case with no direct transmission of the report from the inspector, the report was given to the realtor who was the agent of the seller; it was implied by the Mississippi Supreme Court that the inspector owed the third party/purchaser the tort duty by treating it as a non-issue]; Payne v. O'Quinn, supra, [a factually distinguishable termite inspection case on this point because (assuming the vendor paid for the inspection report) the realtor/joint agent of the vendee and vendor was given the report for the vendee; the Barries' petition does not allege the realtor acted as their agent]. No privity was needed because the document was prepared and supplied for the Barries' guidance, though they were known only as the prospective vendees of the dwelling located at 32-32A-34 Orpheum Avenue in Metairie. Palumbo did not have to know the Barries as individuals at the time the report was supplied. § 552, comment H. The duty of care attached to the plaintiffs' identity not because Palumbo knew them as individuals but because he knew Secor intended to transmit the report to its prospective purchasers. See § 552, comments H, J.
Defendants, as licensed structural pest control operators under LSA-R.S. 3:3361 et seq. issuing a wood destroying insect report as required by LSA-R.S. 3:3370(C), by implication, held themselves out as specialists.[19] The Barries, as intended recipients of the wood destroying insect report, were entitled to expect that a structural pest control operators licensed by this state would perform its investigation with reasonable care and competence, exercising normal professional competence when issuing its written report. See § 552, comments E, F.
Tort liability extending to third persons for whose benefit and guidance the wood destroying insect report is supplied, promotes the maintenance of a high quality of services by the licensed structural pest control operator and imparts confidence in those services to the contracting party and to those persons who, due to current business practices, are expected to receive and rely upon the contents *1018 of the report. Therefore, the duty to use reasonable care and competence in obtaining the information for the wood destroying insect report and communicating it to the prospective buyers of the dwelling existed as a matter of law.

V.
In addition to their lack of duty argument, V.P., Palumbo and Scottsdale claim that the Barries' petition fails to state a cause of action and/or they are entitled to summary judgment because the Barries failed to comply with alleged conditions precedent to suit.
Prior to answering plaintiffs' first supplemental and amending petition, Scottsdale filed a pleading which included the dilatory exception raising the objection of prematurity. Scottsdale's dilatory exception was based upon the Barries' alleged failure to comply with a boilerplate provision on the back of the wood destroying insect report issued to Secor which, in pertinent part, provided: "No cause for action or claim for damages shall be filed in a court of law until an inspection of the property has been made by an inspector of the Louisiana Structural Pest Control Commission ..." However, in the memorandum it filed on behalf of itself, V.P. and Palumbo, Scottsdale merged its procedural prematurity argument into the substantive arguments it made for the three defendants in support of their exceptions of no cause of action and motions for summary judgment.
The time for pleading the dilatory exception of prematurity is prior to answer or judgment of default. LSA-C.C.P. art. 928(A). The objection of prematurity is waived unless pled in the dilatory exception. LSA-C.C.P. arts. 926. Therefore, this prematurity argument which is based on the failure to comply with a contractual provision, was waived when V.P. and Palumbo answered plaintiffs' original petition without a prior pleading of that dilatory exception objection. LSA-C.C.P. arts. 926, 928(A). Once waived, the prematurity argument could not be resurrected by camouflaging it as a substantive issue.

VI.
The purpose of the peremptory exception raising the objection of no cause of action is to determine the legal sufficiency of the petition. No evidence may be offered at any time to support or controvert the exception. LSA-C.C.P. art. 931. The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to plaintiff if those facts are proved at trial. The exception must be overruled unless the plaintiff has no cause of action under any evidence admissible, based upon the pleadings. LSA-C.C.P. art. 927; Robinson v. North American Royalties, Inc., 470 So.2d 112 (La.1985); Smith v. Cole, 553 So.2d 847 (La.1989). When the grounds of the exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment. LSA-C.C.P. art. 934.
The law recognizes that defendants owed the Barries a duty to use reasonable care and competence in obtaining the information for the wood destroying insect report and communicating it to them because they knew that prospective buyers of the inspected dwelling would be given the report and guided by it. The Barries' petition sufficiently alleges facts of defendants' breach of that duty and their resulting damages. If they prove their allegations of facts at trial, they will be entitled to relief.
The trial court, therefore, erred in sustaining the peremptory exceptions raising the objection of no cause of action. It also erred in granting the motions for summary judgment. Genuine issues of material fact exist for trial. See LSA-C.C.P. art. 966(B).

ORDER
For the reasons assigned, we reverse the judgments of the lower courts. The peremptory exceptions and summary judgments are vacated. The case is remanded to the trial court to proceed in keeping with the principles enunciated herein. All costs are to be assessed against respondents.
REVERSED AND REMANDED.
MARCUS, J., dissents and assigns reasons.
*1019 MARCUS, Justice (dissenting).
I disagree with the majority's finding that a duty was owed by V.P. to the Barries. Given the absence of privity or any direct or indirect communication between V.P. and the Barries, I am unable to see how any duty is owed to them by V.P. The majority focuses on the fact that V.P. knew that the bank intended to transmit the report to the prospective purchasers. Such a finding may go to foreseeability, i.e., the scope of the duty, but is not relevant until a duty is first established.
Accordingly, I respectfully dissent.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, DENNIS, J., was not on the panel which heard and decided this case.
[2] Secor's answer recites a clause from the act of sale declaring the property was sold "as is":

The property described above is being sold "as is" and "where is" condition "with all faults" and this sale is made without any warranties, representations, guarantees, either express or implied, of any kind, nature or type whatever, from or on behalf of the seller, including the implied warranty of merchantability as fitness for those particular purposes. As to the fitness or use or condition of the above described property, even as to warranty of title. Further, buyers declare that they have examined the above described property prior to the date of this sale and they specifically waive all rights against the seller, including any and all claims that they have for redhibitory defects and more particularly waive all of those rights provided for pursuant to Louisiana Civil Code Articles 2520 through 2548 inclusive.
Secor's answer also alleges the Barries, who are licensed real estate brokers, initialled the waiver of warranty provision and the Barries knew the property had been repossessed by Secor and Secor was an absentee owner. It asserts that, prior to the closing of the act of sale, Secor had no information relative to the possibility of termite damage to the property.
[3] The cross-claim alleges that V.P. contracted with agents of Secor to perform a termite inspection of the property and Palumbo, on behalf of V.P., "issued a wood-destroying insect report dated September 11, 1990 indicating that no visible evidence of an active infestation from wood destroying insects was found, some areas of the property were obstructed or inaccessible, noting that an expansion joint around the perimeter of the house and wood floor at the basement level were possibly making contact with the ground." The cross-claim asserted Secor's entitlement to indemnification from V.P., Palumbo and their insurer because of its reliance upon the termite report.

The cross-claim has not been dismissed, nor does it present any issues in this writ.
[4] The pleading is captioned "Exceptions of Prematurity and No Right or Cause of Action and Motion for Summary Judgment." The caption appears to improperly combine the objections of no cause of action and no right of action, as if they were one objection, dissonantly to the Code of Civil Procedure. The Code provides for only three exceptions: the declinatory, dilatory and peremptory exceptions. LSA-C.C.P. art. 922. Two objections which may be raised by the peremptory exception are no cause of action and no right of action. LSA-C.C.P. art. 927. There is no exception or objection of "no cause or right of action" in Louisiana's procedural scheme.

Other than raising the objection, Scottsdale has not pursued the defense of no right of action.
[5] This pleading is entitled "Exceptions of No Right or Cause of Action and Motion for Summary Judgment." The dilatory exception of prematurity was not filed on behalf of V.P. and Palumbo. Additionally, as with Scottsdale's pleading, the defense of no right of action was not pursued. See note 4, supra.
[6] However, plaintiffs' second supplemental and amending petition specifically alleges contract claims. See note 7, infra.
[7] The second supplemental and amended petition alleges in pertinent part that V.P. and Palumbo were negligent for not performing a careful inspection of all accessible areas of the property; that the inspection report issued by them did not contain an adequate description of the active termite infestation obviously existing at the time of inspection or of the visible evidence of conditions conducive to infestation which renders the property practically insusceptible of termite treatment; and that they were negligent in the inspection, the preparation of the Wood Destroying Insect report and its dissemination. It also alleges that V.P. and Palumbo maintain a relationship with plaintiffs "by virtue of the fact that the contract is submitted for acceptance by the purchaser; that the contract identifies the seller of the property as Secor Bank and, clearly, the certificate indicates that it was to be submitted to a purchaser; that the plaintiffs relied upon the termite certificate issued by [V.P.] and, further, that [V.P.] knew or should have known that plaintiffs would rely upon their certificate to their detriment and, further, that the petitioners were reasonable in relying upon the certificate since they contracted for the issuance of the termite certificate in connection with the sale and that [V.P.] was a dually licensed pest control entity." Additionally, it alleges a contract claim against V.P. and Palumbo based upon the payment of the purchase price of the house encompassing payment for the termite certificate.
[8] LSA-C.C. art. 1967 provides as follows:

Art. 1967. Cause defined; detrimental reliance
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other part to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
[9] Discussing the differences of duty in performing a contract not fraudulently as opposed to not negligently, Cardozo stated:

A different question develops when we ask whether they owed a duty to these to make it without negligence. If liability for negligence exists, a thoughtless slip or blunder, the failure to detect theft or forgery beneath the cover of deceptive entries, may expose accountants to liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences. 174 N.E. at 444.
[10] Some courts maintain there are four standards, the last standard being a balancing test. First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9, 12 (Fla.1990). See also Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 843 P.2d 890, 896 (Or.1992) [case by case determination of the scope of the duty]; Cook Consultants, Inc. v. Larson, 700 S.W.2d 231 (Tex.App. 5 Dist. 1985) [duty/risk analysis].
[11] Discussed in terms of accountant liability, New York's restrictive minority view holds accountants liable to non-clients only if 1) the accountants actually know that their financial reports are to be used for a particular purpose; 2) the accountants must actually know that a non-client is expected to rely upon the financial reports in furtherance of a particular purpose; 3) there must be some conduct, on the part of the accountants, that links them to the non-client and evinces the accountants' understanding of the third party's reliance upon the audit. Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118; First National Bank of Commerce v. Monco Agency Inc., 911 F.2d at 1058; MidAmerican Bank & Trust Co. v. Harrison, 851 S.W.2d at 565.
[12] Section 552 of the Restatement (2d) of Torts, provides as follows:

§ 552. INFORMATION NEGLIGENTLY SUPPLIED FOR THE GUIDANCE OF OTHERS
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
[13] LSA-C.C. art. 2315 provides in pertinent part as follows:

Art. 2315. Liability for acts causing damages
Every act whatever of a man that causes damage to another obliges him by whose fault it happened to repair it.
[14] LSA-C.C. art. 2316 provides as follows:

Art. 2316. Negligence, imprudence or want of skill
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or by his want of skill.
[15] The petition of plaintiff, Annie Devore, alleged she was a Rapides Parish School Board employee who was injured by boiling water when it spewed out of a double boiler in the school kitchen. Her attorney wrote to the school board to learn the name of the manufacturer of the double boiler. The school board, through its Director of Food Services, negligently advised Devore's attorney that the manufacturer was Cleveland Manufacturing Company rather than Cleveland Range Company. As a result, Devore's attorney sued the wrong manufacturing company. More than a year after the anniversary of Devore's injury, the correct manufacturer was named as a defendant and, in the alternative, so was the Rapides Parish School Board and its Director of Food Services for supplying the misinformation. The correct manufacturer was dismissed by the trial court on the peremptory exception of prescription. The trial court also dismissed the school board and its director on a peremptory exception of no cause of action. The court of appeal affirmed, as did this court. While this court recognized that LSA-C.C. arts. 2315 and 2316 are sufficiently broad to encompass a cause of action for negligent misrepresentation we, nevertheless, found plaintiff's petition failed to state a cause of action under that tort theory because there was no duty on the part of defendants to supply the correct information. 367 So.2d at 839. We stated that defendants did not have an affirmative duty to supply correct information merely because it had gratuitously provided plaintiff with the information requested, especially as it had not apprised the school board of the high degree of reliance she would place upon the information. Id. We further found there was no duty on the part of defendants to supply the correct information because plaintiff did not allege defendants had actual knowledge of the use plaintiff intended or defendants' exclusive control over the information. Id.
[16] See also Mills v. Ganucheau, 416 So.2d at 365 [although plaintiff was not the user of the misinformation, the Clerk of Court was found to have a duty to properly check the records of the court before replying to a letter from the Los Angeles Police Department, when he knew the possibility of criminal actions against plaintiff was dependent on his response; the Clerk of Court was found liable for damages plaintiff suffered when he was extradited and incarcerated].
[17] Plaintiffs have not pursued a stipulation pour autrui argument. That contract issue is not before this court.
[18] The copy of the wood destroying insect report submitted by defendants evidences Palumbo's knowledge of the purpose and intended use of his report by its form language which specifically references the "sellers" and the "purchasers" of the dwelling.
[19] By law, those engaged in the business of structural pest control work must meet the statutory requirements of LSA-R.S. 3:3367 before obtaining a permit to operate. LSA-R.S. 3:3368 regulates the application for and issuance of the structural pest control operators license. It demands that the applicants applying for the examination, which includes the general standards examination required by the EPA and a separate examination for each category in which the applicant desires to be licensed, must possess certain qualifications prior to taking the examination(s).