GUIDRY, J.
Ip,A legatee to a testament that was later determined to be invalid appeals a judgment dismissing her claims against the notary public that notarized the invalid testament.
FACTS AND PROCEDURAL HISTORY
On February 3, 2004, William R. Bice, a commissioned notary public, was called to *1057 the home of Eddie L. Reid to notarize Mr. Reid’s last will and testament. On arriving at Mr. Reid’s home, Mr. Bice was presented with a handwritten document entitled “Last Will & Testament.” Mr. Bice witnessed the signing of the document by Mr. Reid and two witnesses. Mr. Bice then signed the document in his capacity as notary. The document provided that “[a]fter all debts are settled[,] the remaining money shall be split equally between my niece Vanessa Courtney Reimer, my niece Norma Jean Courtney Fechtner & my cousin Susan Reid Helton.”
On February 27, 2004, Mr. Reid died, and subsequently, a succession was opened to settle his estate. It was later discovered that the document Mr. Bice notarized on February 3, 2004, was not a valid testament, as it was not drafted in any of the proper forms for a valid testament under Louisiana law. A prior testament was then located and probated. Mr. Reid did not grant Ms. Fechtner any bequests under the prior testament.
On December 17, 2004, Ms. Fechtner filed a petition for damages against Mr. Bice, alleging that because of his negligence in failing to properly advise Mr. Reid as to the validity of the document that was executed on February 3, 2004, she did not receive the bequest her uncle had desired to give her. In answer to Ms. Fechtner’s petition, Mr. Bice denied any liability for the invalidity of the document.
Thereafter, Ms. Fechtner filed a motion for summary judgment, asserting that “there being no disputed issue of material fact and the law being in her favor,” |ashe was entitled to a judgment against Mr. Bice “for the loss of her legacy in the amount of $49,808.75.... ” The trial court later denied the motion for summary judgment, and a bench trial on the merits of Ms. Fechtner’s petition was held on June 1, 2006. After considering the law and evidence presented, the trial court rendered judgment in favor of Mr. Bice dismissing Ms. Fechtner’s petition, and Ms. Fechtner now appeals.
DISCUSSION
The sole issue to be addressed in this appeal is whether the trial court erred in finding that Mr. Bice did not have a duty to ascertain that the document he notarized was valid in form under the specific facts presented.
The undisputed facts of this matter are that Mr. Bice was called to the home of Mr. Reid to notarize Mr. Reid’s testament. Mr. Bice was not asked to draft the document. He also was not asked to review the document nor did he read it. Mr. Bice, who is not a licensed attorney, was commissioned as a notary in 1975 in Natchitoches, Louisiana. He received no formal training nor did he take any courses to be a notary public prior to receiving his commission. According to Mr. Bice, he was simply required to complete a form, about a legal page and a half long, full of questions. He later moved to Tangipahoa Parish and was certified as a notary public in that parish in the early 1980s. Mr. Bice worked for mortgage and finance companies until 1999, when he opened his own notary business in which he primarily notarizes motor vehicle transfers and affidavits.
On February 3, 2004, Myrtle Clark, Mr. Reid’s sister, asked Mr. Bice to come to Mr. Reid’s home to notarize Mr. Reid’s testament. Mr. Bice was acquainted with both Mrs. Clark and Mr. Reid. On arrival, Mr. Bice entered Mr. Reid’s home through the kitchen, where Mrs. Clark met him. Also present in Mr. Reid’s home on that day were Joyce McCord, Mr. Reid’s ex-wife, and JacLyn 140wenby, Mrs. Clark’s daughter. Mr. Reid was also present but *1058 was lying down in a room that adjoined the kitchen.
On being presented with the document to be notarized, Mr. Bice observed that it was handwritten. Based on this observation, Mr. Bice stated that a handwritten will did not need to be notarized;[1] however, when Mrs. McCord insisted that he notarize the document anyway, he further advised that two witnesses were needed and that the witnesses could not be named in the document. Thereafter, the document was presented to Mr. Reid to sign, following which the two witnesses, Mrs. Clark and Mrs. Owenby, signed the document. Mr. Bice then signed and dated his signature, writing the word “Notary” and printing his name and notary number below his signature.
Notaries public have power within their several parishes to receive wills. La. R.S. 35:2(A)(l)(b). In Dale v. Corriere, 537 So.2d 346, 347 (La.App. 4th Cir.1988), writ denied, 538 So.2d 615 (La.1989), the court, in considering the nature of the authority thus granted a notary public, held:
There is no law in Louisiana which requires a notary to give inspection for legal flaws and guaranty validity of every document which he notarizes when he is hired only in his capacity of a notary and not as a drafter or guarantor of validity of such documents. ... Nor are the duties of a notary that of an attorney. Succession of Edward Harrison Michel, 225 So.2d 480 (La.App. 4th Cir.1969).
In this instance, Mr. Bice was neither asked for nor did he give an opinion as to the validity of the document he was asked to notarize. Moreover, as observed by the court in Dale, he was not required by law to inspect the document that he did not Isdraft to verify or guarantee its validity. See Dale, 537 So.2d at 347. Further, Mrs. Fechtner’s assertion that Mr. Bice could have made the document a valid testament by adding an attestation clause wrongly presumes that Mr. Bice had a duty to guarantee that the document was valid in form. Hence, Mr. Bice cannot be held liable for the fact that the document was improperly drafted.
We also find no merit in Mrs. Fechtner’s assertion that she is entitled to recover on her claim based on the tort of negligent misrepresentation. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to plaintiff caused by the breach. Hughes v. Goodreau, 01-2107, p. 19 (La. App. 1st Cir.12/31/02), 836 So.2d 649, 663, writ denied, 03-0232 (La.4/21/03), 841 So.2d 793. To state a cause of action for negligent misrepresentations, the representations must be classified as misrepresentations. Daye v. General Motors Corporation, 97-1653, p. 6 (La.9/9/98), 720 So.2d 654, 659. In Louisiana, a claim of negligent misrepresentation is evaluated using the duty/risk analysis. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1015-1016 (La.1993) (“The case by case application of the duty-risk analysis, presently employed by our courts, adequately *1059 protects the misinformer and the misinformed because the initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm.”)
As previously discussed, as a notary, Mr. Bice owed no duty to supply any information regarding the validity of the will. Mr. Bice was never asked to review the document he notarized to see if it was valid in form nor, according to Dale, was he required to do so. Additionally, other than observing that the document was handwritten, Mr. Bice did not read the document he was asked to notarize. Mr. Bice’s statements regarding whether a handwritten/olographic will needed to be | ^notarized cannot be construed as his assuming a duty to verify or guarantee its validity nor as his offering an opinion as to its validity.
CONCLUSION
Accordingly, we affirm the judgment of the trial court dismissing Mrs. Fechtner’s claims against Mr. Bice. Costs of this appeal are cast to the appellant, Norma Jean Courtney Fechtner.
AFFIRMED.
McClendon, j., concurs.

. The testimony of Mrs. Clark and Mrs. Ow-enby regarding the statements made by Mr. Bice on being given the document was also presented at trial. Mrs. Clark was unable to appear in person at the trial, so her deposition testimony was presented in lieu of her live testimony. In her deposition, Mrs. Clark stated that Mr. Bice said the document was an olographic will and that he did not need to notarize it. Mrs. Owenby also testified that Mr. Bice stated that the document was an olographic will that “he didn’t need to sign.” Both women further testified that Mr. Bice notarized the document anyway at Mrs. McCord’s insistence.