GUIDRY, J.
|gA commercial business appeals a summary judgment dismissing its claim of negligent misrepresentation against a real estate appraisal company. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In 2013, Earl A. Dufrene and Julio C. Arana, the members and owners of Bayou Concrete Pumping, LLC., hired David Dominguez of the Morse Team, Inc., a real estate company doing business as Remax Northlake Associates, to. help locate commercial property along Interstate 55 near the Covington/Abita Springs area for the storage, maintenance, fueling, and servicing of Bayou Concrete’s fleet of trucks used for work projects in the Northshore area. Dominguez identified 1.930 acres in Covington, Louisiana, owned by Richard S. Blossman, Sr. and Virginia Lynn Stogner Blossman, as meeting the business needs of Bayou Concrete. The Blossman property was listed by Eugene J, Rutter, Jr., of Rutter Realty, LLC. According to the multiple listing service (MLS) listing for the property, the property was zoned “HC-2 — highway commercial.” On July 12, 2013, Dufrene executed a purchase agreement to acquire the property from the Blossmans for $87,500.00.
A portion of the purchase price, $70,000.00, was .financed by Gulf Coast Bank and Trust Company. In conjunction with financing the acquisition of the Bloss-man property, Gulf Coast Bank arranged for Murphy Appraisal Services, LLC to appraise the property. The cost of the appraisal, $1,000.00, was billed to Gulf Coast Bank. According to the appraisal completed by Murphy Appraisal Services, *647 the market value of the Blossman property was $125,000.00. On September 16, -2013, an act of cash sale was executed transferring ownership of the 1.930 acres from the Blossmans to Dufrene and Arana.
| sAfter purchasing the property, Du-frene and Arana had the property cleared and were in the process of having gravel hauled onto the property when a stop work order was posted on the gate of the property. It was following the posting of that notice that Dufrene and Arana learned that the property was actually zoned “A2 — suburban residential.”
On February 10, 2014, Dufrene, Arana, and Bayou Concrete (collectively “plaintiffs”) filed a petition for damages against Murphy Appraisal Services, Dominguez, the Morse Team, Rutter, and the Bloss-mans, alleging that the property purchased was “useless for their intended commercial purposes.” The plaintiffs sought return of the purchase price, attorney fees, and various other expenses related to clearing and preparing, ownership, and their inability to use the property as intended. All of the named defendants answered the plaintiffs’ petition to generally deny liability for the plaintiffs’ claims. The plaintiffs later filed a supplemental and amending petition to specifically name the respective insurers of the named defendants that were referred to in the original petition.
On March 6, 2015, Murphy Appraisal Services filed a motion for summary judgment, asserting that the plaintiffs could not prevail on their claims against it. Specifically, Murphy Appraisal Services alleged that the plaintiffs were not a party nor a third-party beneficiary of the appraisal contract with Gulf Coast Bank and thus had no grounds to assert a contract claim. As for the plaintiffs’ tort claim, Murphy Appraisal Services alleged that it had no reason to know or believe that the appraisal report would be furnished to the plaintiffs prior to the purchase of the property, and that, in fact, the report was not furnished to any plaintiff until after the act of sale for the property had been passed. Alternatively, Murphy Appraisal Services alleged that the plaintiffs could not prove that the error in the appraisal report caused their claimed damages, because the plaintiffs’ intended use of the | ¿property could not be conducted in the erroneous zoning designation of HC-2 given in the appraisal.
Following a hearing on the motion, the trial court granted Murphy Appraisal Services’ motion for summary judgment, finding:
Whether or not I agree with Murphy Appraisal’s contention that they have no duty to a perspective purchaser because of their lack of contractual relationship, that’s another question for another day. In this case for certain, Mr. Dufrene, the purchasers, did not have knowledge of the Murphy appraisal at the time of the transaction. Therefore, obviously that appraisal could not have been relied upon in any respect by Mr. [Dufrene] for the purposes of entering his decision. Whether or not the bank would have proceeded with the transaction is a matter of speculation, which the Court’s not willing to engage in. , So the Court finds that the Motion for Summary Judgment as to Murphy Appraisal was well-founded and will be granted.
Consistent with these reasons, the trial court signed a judgment on May 7, 2015, granting Murphy Appraisal Services’ motion for summary judgment and dismissing the plaintiffs’ suit against it with prejudice. Plaintiffs filed a petition to devolutively appeal that judgment.
DISCUSSION
Although in their brief on appeal, *648 plaintiffs list five assignments of error,[1] they essentially argue that the trial court erred in failing to find that genuine issues |fiof material fact existed as to whether the plaintiffs had a viable claim of negligent misrepresentation or general negligence against Murphy Appraisal Services.[2]
In Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1014 (La.1998), the Louisiana Supreme Court recognized that “Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation where privity of contract is absent.” The court acknowledged that the approach “in negligent misinformation cases has been to integrate the tort doctrine into the duty/risk analysis” and found that a “case by case employment of the duty/risk analysis is the appropriate standard in this state for determining legal responsibility for negligent misrepresentations.” Barrie, 625 So.2d at 1015. In considering the duty element of the duty/risk analysis in particular, the court held “[t]he case by case application of the duty/risk analysis, presently employed by our courts, adequately protects the misinformer and the misinformed because the initial inquiry is whether, as a matter- of law, a duty is owed to this particular plaintiff to protect him from this particular harm.” Barrie, 625 So.2d at 1016.
In Barrie, the Louisiana Supreme Court ultimately held that a duty existed to exercise reasonable care and competence in obtaining and communicating information to protect third persons for whose benefit and guidance the information was sought and supplied and who may detrimentally rely on the information, thereby suffering pecuniary loss. See Barrie, 625 So.2d at 1008. In reaching the conclusion that the duty owed extended to the third-party purchasers in Barrie, the court observed:
The duty was owed to the Barries even though they were a third party to V.P., without privity of contract or direct or indirect contact, because they were known to V.P. as the intended users of the report. The Barries were members of the limited group for whose benefit and \ (guidance the report was contracted and supplied. V.P. owed the duty to the Barries because of its knowledge that the ultimate purpose for the report, and its employment, was to facilitate the sale of the dwelling it inspect *649 ed. The Barries’ expected use of the report made the magnitude of their loss a foreseeable probability. The obligation for the liability is imposed by law based upon policy considerations due to the tortfeasor’s knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user. The duty of care owed by V.P., encompassed by LSA-C.C. arts. 2315 and 2316, is compatible with the one stated in the Restatement (2d) of Torts, § 552. Liability is not confined by the limitations of the third-party beneficiary/stipulation pour autrui contact theory.
Barrie, 625 So.2d at 1016 (emphasis added) (citation omitted).
The evidence submitted in conjunction with the motion 'for summary judgment clearly shows that the “intended user” of the appraisal report in this case was not the plaintiffs, but Gulf Coast Bank. Murphy Appraisal Services submitted a copy of an appraisal engagement letter dated September 9, 2013, wherein Gulf Coast Bank requested Murphy Appraisal Services to provide an appraisal “per industry standards,” and a copy of an invoice addressed to Ms. Elana Stevens of Gulf Coast Bank “as client” dated September 12, 2013, generated by Murphy Appraisal Services for completing the appraisal.
Murphy Appraisal Services also submitted excerpts from the depositions of Du-frene, Arana, and Richard L. Murphy of Murphy Appraisal Services. In his deposition, Murphy, who had been an appraiser for about 30 years and had testified as an expert in Louisiana courts about 10 to 12 times, expressed his disagreement with the assertion that an appraisal is intended for the buyer. As he explained:
No, not necessarily. I mean they kind of cleaned that up a few years back, about six or seven years ago, where, you know, even if the borrower was paying the fee, it was crystal clear we were going to get an engagement letter directly from the bank and the fee is going to be X-and they’are going to pay us basically. '
[[Image here]]
I understand that the borrower probably reimburses them for that fee, but they kind of crystalized it as to you know, they are paying me and I. have a contract with the bank.
[[Image here]]
|7And some of the banking difficulties caused this, you know, and they wanted to make it clear that you weren’t working for, the borrower!,] you were working for the bank, to make sure that,, you .know, that there wasn’t any influence from the borrower, I guess was the point.
In their depositions, Dufrene and Arana candidly admitted that they neither received nor reviewed the Murphy Appraisal Services’ appraisal prior to either selecting the property for purchase , or completing the purchase of the property.[3]
*650 Plaintiffs do not deny the fact that they did not rely on or even use the appraisal completed by Murphy Appraisal Services to select or decide to purchase the Bloss-man property. Rather, as indicated by the evidence submitted by the parties, although the plaintiffs were ultimately responsible for paying for the costs of the appraisal, the anticipated and actual user of the appraisal was the party that contracted for the Murphy Appraisal Services’ appraisal, Gulf Coast Bank, which used the appraisal to verify that the property was of sufficient value to secure the loan that was being granted to facilitate the purchase of the property. The purchase agreement signed by Dufrene conditioned the sale of the property on “the ability of BUYER to borrow with this Property as security for the loan,” and in fact, Dufrene arid Arana were able to borrow $70,000.00 from Gulf Coast Bank using the property as security.
Thus, based on the facts and evidence presented in the instant matter and considering the policy concerns discussed in Barrie, we cannot say the trial court erred in finding that the plaintiffs failed to establish that the duty owed by Murphy Appraisal Services extended to them. The evidence clearly demonstrates that Gulf | sCoast Bank was the intended and actual user of the appraisal generated by Murphy Appraisal Services. See Lemaire v. Breaux, 00-1826, pp. 7-8 (La.App. 5th Cir.4/11/01), 788 So.2d 498, 503. While the zoning error in the appraisal arguably could affect the valuation of the property,[4] which valuation arguably influenced Gulf Coast Bank’s decision to finance the purchase of the property, the fact remains that even if the zoning classification recited in the appraisal had been correct, the plaintiffs would still be in the same position — as owners of property that they cannot use as intended.[5] Accordingly, we find the trial court properly granted summary judgment in this matter.
CONCLUSION
For the foregoing reasons, we affirm the May 7, 2015 summary judgment in favor of Murphy Appraisal Services, LLC, dismissing it from the plaintiffs’ suit with prejudice. All costs of this appeal are cast to the plaintiffs/appellants, Earl A. Dufrene, Julio C. Arana, and Bayou Concrete Pumping, LLC.
AFFIRMED.

.The errors specifically alleged by plaintiffs were:
1. The trial court erred in granting the Motion for Summary Judgment in determining there was no question of material fact existing as to whether or not Murphy Appraisal Services, LLC ... was negligent in misrepresenting the zoning of the commercial property purchased by Plaintiffs;
2. The trial court erred in determining there was no duty, as a matter of law, owed to Plaintiffs in connection with the,appraisal of the property purchased by Plaintiffs;
3. The trial court erred in determining that it was not foreseeable that Mutphy Appraisal Services, LLC would rely on its appraisal improperly designating the property purchased by Plaintiffs as zoned "HC-2” (commercial) instead of residential;
4. The trial court erred in determining the Plaintiffs could not reasonably expect to rely on the appraisal of Murphy Appraisal Services, LLC, which had the improper zoning designation, especially since the property was financed by Gulf Coast Bank;
5.The trial court erred in not determining that the Plainiffs were the ultímate consumers of the incorrect appraisal performed by . Mutphy Appraisal Services, LLC, in that it paid $1,000.00 to Gulf Coast Bank for reimbursement of the appraisal at the closing for said property.

. The plaintiffs also alleged they had privity of contract, or at the least, were third-party beneficiaries of the appraisal contract between Gulf Coast Bank and Murphy Appraisal Ser- . vices, but did not further brief this argument. As such, plaintiffs have waived consideration of that argument.

. The record reveals that Dufrene was primarily responsible for selecting and negotiating the purchase of the property at issue. Dufrene made an initial offer to purchase the Blossman property for $75,000.00 on July 11, 2013, and later accepted a counter offer to purchase the property for $87,500.00 on July 12, 2013. Although the purchase agreement contained language for a provision conditioning the sale of the property on appraisal, the language was not selected on the pre-printed form. Murphy Appraisal Services' appraisal of the property was completed on September 12, 2013, two months after execution of the purchase agreement for the property and three days before the act of sale was passed on September 16, 2013.

. In opposition to the motion for .summary judgment, the plaintiffs submitted a copy of ah appraisal issued by another certified appraiser, David Winstead, who found the market value of the property to be $50,000.00 to $55,000.00. Murphy and Sergio Mesa (the real estate appraiser trainee who assisted in completing the Murphy Appraisal Services’ appraisal of the Blossman property) both acknowledged in their depositions that commercial property is generally more valuable for appraisal purposes than' residential property. Nevertheless, in performing a second appraisal of the property on November 13, 2013, at the request of Gulf Coast Bank, Murphy Appraisal Services still valued the property at $125,000.00, which value conclusion was based on conversations between representatives of Murphy Appraisal Services and the local zoning department indicating that the zoning department wohld likely allow the rezoning of the property to commercial.

. Dufrene admitted in his deposition that he had been told by zoning officials that Bayou Concrete trucks could not be stored on property with a HC-2 zoning classification, and for the plaintiffs’ intended use, they would need to acquire property with an industrial zoning classification.