465 So.2d 172 (1985)
Eljay GARY & Donald Henry, Plaintiffs-Appellants,
v.
DYSON LUMBER & SUPPLY COMPANY, INC., et al., Defendants-Appellees.
No. 84-210.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*173 Ronald E. Dauterive, Lafayette, for plaintiffs-appellants.
Brame, Bergstedt & Brame, Joe A. Brame, Woodley, Barnett, Cox, Williams, Fenet & Palmer, Edmond E. Woodley, Lake Charles, Jeansonne, Briney & Goudelocke, Craig W. Marks, Lafayette, for defendants-appellees.
Before GUIDRY, FORET and STOKER, JJ.
STOKER, Judge.
This is an appeal from a judgment granting a motion for a directed verdict dismissing plaintiffs' demands. The plaintiffs claim damages for burns they suffered from contact with allegedly defective concrete. The trial court found the plaintiffs did not prove the concrete was defective, and that defendants had no duty to warn them of the concrete's dangerous propensities.

FACTS
Plaintiff, Eljay Gary, asked his wife, Shirley Gary, to order five cubic yards of concrete from defendant, Dyson Redi-Mix Company, Inc., for use as a foundation for an addition to their home. The concrete was delivered, and Gary and his son-in-law, Donald Henry, attempted to place the concrete as it was poured and to level it. Gary asked that more water be added to the mix so that it would be easier to work with. The concrete began to harden before they had finished leveling it, and Gary added more water. Both men got down on their hands and knees in the concrete. After working the concrete in this way for fifteen to thirty minutes, they began feeling burning sensations in those portions of their bodies which had come in contact with the concrete. Although they were burning, they continued to work the concrete since it would harden and they would be unable to finish the job if they stopped. Before they finished leveling the concrete they stopped working because they were burning. Both suffered chemical burns on the legs, and Mr. Gary suffered chemical burns on his right hand.
Both Gary and Henry sued Dyson for injuries sustained. Gary also sought damages for the cost of the concrete and the cost to remove the slab poured. Dyson filed third-party complaints against General Portland, Inc., Trinity South Division, and Alpha Portland Industries, Inc., the manufacturers of the cement used in the concrete. Gary and Henry added the two manufacturers as defendants.
The case was tried before a jury.
At the close of all evidence, the trial court granted a directed verdict in favor of all three defendants and dismissed plaintiffs' demands with prejudice at plaintiffs' costs.
On appeal Gary and Henry contend the trial court erred in granting a directed verdict.
A trial judge has the authority to grant a motion for a directed verdict in a jury trial. LSA-C.C.P. art. 1810. In Campbell v. Mouton, 373 So.2d 237 (La. App. 3rd Cir.1979), this Court set forth the standard to be used in granting a motion for directed verdict under Article 1810 of the Code of Civil Procedure. This standard is:
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the *174 motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
The trial judge gave articulate and detailed reasons for his ruling, and from these it is clear he applied the above quoted standard. The court's ruling is as follows, in pertinent part:
"The tests on these particular motions before the Court right now are much like the standards required in the motion for summary judgment. I must take the facts before the Court and construe them most favorably to the plaintiff and then decide if reasonable men could come to a conclusion other than that the plaintiff has failed to meet his burden. Primarily, this case turned upon the allegation that this concrete was different. I think that's what the pleadings said, and that was the thrust of the testimony of the plaintiffs themselves, who said that it began burning right away and it acted different, it set up faster, and the drum on the truck wasn't turning, whatever that means; this was different. And I will mention that, but I want to first really address another issue which is a possible basis of liability for one of the defendants, and that's the failure to warn. Even in the event that a product is ordinary, there can be a defect in the way it is marketed or in the way that a consumer or other user comes into contact with it. This occurs when a victim is ignorant of the dangerous properties of a product, and the offender violates some duty by failing to apprise the victim. For this discussion I have to assume just for the moment that this was ordinary concrete and, of course, the only defendant affected by the imposition of a duty to warn would be Dyson, because only its agent was in a position to warn the plaintiffs of a possibility of harm. The facts in this case, construed most favorably to the plaintiffs, show that Mr. Gary was an experienced capenter with a more than adequate amount of experience in the finishing and handling of concrete. He was not a novice. His son-in-law, Donald Henry, although not a carpenter, was also a person who has dealt with concrete, and both, by their own testimony, were aware of the dangerous nature of concrete. Their act of clothing themselves as they did that day with rubber boots, rubber gloves, full length shirts, gave every appearance that they were aware that ordinary concrete will burn the skin. In view of this, the failure to warn did not exist. It is black letter law that you do not need to warn someone of a danger of which they are aware or should be aware. So I conclude that a theory of liability based on failure to warn has no support in this record. Now, let's refer to the allegation that this concrete was defective in that it somehow was different and created an unreasonable risk of danger. Plaintiffs' position would have to be supported by its expert witness, Dr. Goldman. A review of his testimony discloses that he did not say that the composition of the concrete was wrong. He did not suggest that either there was a foreign substance which is not to be found in concrete or that the proportions of the usual ingredients were imbalanced. What he stated was that the sample had a high alkalinity. And I'm not going to hang this decision on his statement about there being no defect. The total content of his testimony is that the slurry formed when cement and water are mixed is alkaline. True, it is a high alkalinity, but when you use the word high it is a relative term. The alkalinity was high when compared to most things that we encounter which are neutral, being neither highly acidic or highly alkaline. And Dr. Key's testimony educated us to the fact that high alkalinity is naturally a feature of concrete and a characteristic of the chemical reaction necessary to create concrete. So the product manufactured by Dyson with ingredients supplied by the other *175 defendants was not defective in its chemical composition; was not defective in the proportions of its ingredients; and did not present a greater amount of risk that any other concrete would be expected to present. Its alkaline nature fell within normal and expected limits. On these points there was nothing presented on which reasonable minds could differ. And so, consequently, I feel like the motions for directed verdict on behalf of these defendants is well taken, and the same is granted."
Gary and Henry contend the manufacturers and sellers of the concrete are at fault for failure to warn them of its dangerous propensities. As the trial judge stated in his reasons, a limitation placed on the duty to warn is that manufacturers are not liable for dangers known to the user. Thornhill v. Black, Sivalls & Bryson, Inc., 385 So.2d 336 (La.App. 1st Cir.1980), affirmed, 394 So.2d 1189 (La.1981). Both plaintiffs had experience working with concrete, and clothed themselves to provide protection from the concrete. Mr. Gary admitted he knew concrete could cause burns. We hold the defendants had no duty to warn Gary and Henry.
Gary and Henry argue that the concrete was defective because they had worked with concrete before with no problem. They argue that "the dangerousness of concrete is relative." The experts for both sides testified that there is a range of alkalinity in which normal concrete will fall, and that this concrete fell within that range. Within that range there is some variation in its propensity to cause injury, but this concrete was within normal range. In addition, Gary added water to the mixed concrete. With the added water, the concrete could soak through the plaintiffs clothes and come in contact with their skin. The fact that the plaintiffs had never been burned by concrete before does not indicate that this concrete was defective.
Gary and Henry also argue that their testimony that the concrete dried or hardened too fast is evidence enough that reasonable minds could differ in their conclusions. This was the only testimony that there was something different about this concrete. Dr. Goldman's testimony that the concrete hardened too fast was based on the plaintiffs telling him so. He found nothing abnormal about the concrete in his tests. In fact, we find Dr. Goldman's testimony to be more favorable to defendants' case than to plaintiffs' case. Two expert witnesses for the defendants who had tested the concrete in question found nothing abnormal about it. In light of all the expert testimony that this was normal concrete, we do not believe that testimony by the plaintiffs that it hardened too fast would cause any reasonable juror to find this concrete defective.
The trial court did not err in granting the motion for a directed verdict. The judgment is affirmed, and costs of this appeal are assessed to plaintiffs.
AFFIRMED.