552 So.2d 710 (1989)
Jean C. STEWART, Plaintiff-Appellant,
v.
DIXILYN-FIELD DRILLING, et al., Defendants-Appellants,
Halliburton Company, Defendant-Appellee.
No. 88-815.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Thomas & Hardy, Robert W. Thomas, Lake Charles, and Wm. Henry Sanders, Jena, for plaintiff-appellant.
Juneau, Judice, Michael W. Adley, Lafayette, for defendant-appellant, Dixilyn.
Barnett, Pitre, Kathleen Kay, Lake Charles, for defendant-appellant, U.S. Fire.
Plauche, Smith, Allen L. Smith, Lake Charles, for defendant-appellee.
Before YELVERTON, KNOLL, and KING, JJ.
KNOLL, Judge.
Jean C. Stewart, Dixilyn-Field Drilling Company, and its insurer, U.S. Fire Insurance Company, appeal the dismissal of Stewart's claim against Halliburton Company on a motion for summary judgment.
Stewart, Dixilyn-Field, and U.S. Fire contend that there were numerous issues of material fact which precluded Halliburton's *711 dismissal on a motion for summary judgment. We affirm.

FACTS
On August 18, 1985, Dixilyn-Field employed Stewart as a floorhand on Dixilyn-Field Rig 87, a jack-up drilling rig performing work in the Gulf of Mexico.
In mid-August 1985, Rig 87 had been shut down and evacuated because of a hurricane in the Gulf of Mexico. After the storm passed, Rig 87 was relocated over the drilling platform and well where it had been working. Stewart and other Dixilyn-Field employees were preparing the rig to recommence drilling.
Prior to the recommencement of drilling, it was necessary to test the rig's piping under pressurized conditions so that any leaks and structural deficiencies might be detected and repaired. After the blowout preventers and choke manifold were successfully tested to 5000 p.s.i. using Halliburton's pumping equipment, David Hardage, the Dixilyn-Field toolpusher, ordered a test of all the steel piping from the mud tanks to the rig itself.
The Halliburton pumping equipment is located in a special room on a level below the drilling floor, and provides higher pressure pumping capacity than the rig's mud pumps. Mark Anthony Jones, the sole Halliburton employee on Rig 87, was the only person who was authorized to operate the Halliburton equipment.
Dixilyn-Field's driller, Gary Hobbs, instructed Jones that the rig crew was going to test several lines which had been disconnected and resecured after the temporary rig move. Jones stated that he was instructed to first apply low pressure, and then to test the lines up to 5000 p.s.i. It was undisputed that all of the lines to be tested were owned and maintained by Dixilyn-Field, and that it was the rig crew's duty to open and close various valves to direct the pressurized fluid, sea water, to those areas which Dixilyn-Field wanted tested.
Hobbs instructed Stewart to go to the level where the accident happened to visually check the lines for leaks as the Halliburton pump pressurized them.
After Hobbs authorized the commencement of testing, Jones began pumping in to the rig piping system using the Halliburton pump. As Jones applied pressure, a bull plug blew out of a pipe on the level Stewart was checking. Although the plug did not strike him, sea water and an undetermined amount of drilling mud from the rig's mud pumps struck Stewart in the back of the head, shoulders, and middle of the back, injuring him.
Stewart sued Dixilyn-Field, its insurer, U.S. Fire, and Halliburton, alleging negligence on the defendants' parts. After Stewart and Jones' depositions, Halliburton filed a motion for summary judgment, contending that there were no issues of material fact and that it was not negligent.
In granting Halliburton's motion for summary judgment, the learned trial court, in written reasons, stated:
"Halliburton owed no legal duty to Stewart in this case, and had no control over him. It was the duty of the driller and his crew to make the necessary piping connections, to select the pipes to be tested, and to detect any defects in the pipe made evident by the pressure. The very reason for Halliburton's service was to detect defects in the pipe not observable by visual inspection. In absence of any proof whatsoever that the pressure was not correctly supplied, Halliburton should not be held liable because a defect did in fact exist which caused an injury."

SUMMARY JUDGMENT
Stewart, Dixilyn-Field, and U.S. Fire contend that Halliburton's employee negligently failed to advise Dixilyn-Field's employees of the dangers attendant to the pressuring-up procedures, and that Halliburton's employee negligently failed to insure that Dixilyn-Field's employees were not standing in a zone of danger when he pressurized the pipe in question.
The standard for appellate review of summary judgments was outlined in Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981), at page 493:

*712 "A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. The papers supporting mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden." (Citations omitted.)
In the case sub judice, in addition to the various pleadings, the trial court reviewed the depositions of Stewart and Jones in conjunction with the affidavits of Hobbs, Hardage, and a safety expert, Frank Nice.[1]
The facts surrounding the accident in question are not disputed. However, Stewart, Dixilyn-Field, and U.S. Fire contend that Halliburton's employee had a duty to independently assess the safety of the pressuring-up procedure, and that as part of that duty Jones neither warned Stewart of the danger presented by the pressurized pipes nor secured the area where the testing was taking place.
Halliburton does not contest the fact that Jones did not take the safety steps advocated. Rather, it contends that Stewart was an employee under the control of Dixilyn-Field, that Dixilyn-Field supervisory personnel directed Stewart to station himself in the vicinity of pipes which were being tested, and that Dixilyn-Field controlled which pipes were in fact tested. Accordingly, it argues that it owed no duty to Stewart to take the safety steps advanced by Stewart, Dixilyn-Field, and U.S. Fire.
We agree with the trial court that the issues Stewart, Dixilyn-Field, and U.S. Fire raise are not questions of fact, but are more appropriately issues of law. Our inquiry, then, is whether the trial court erred when it determinated that the undisputed facts did not give rise to any legal duty on Halliburton's part.
In Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988), the Louisiana Supreme Court summarized the duty/risk analysis at page 1155:
"Under one analytical approach, in order for a defendant to be held liable for damages caused another by his negligence, affirmative answers must be given to these questions: (1) given the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered to be fault? (2) If the defendant owed such a duty, did his conduct fall short of the standard and come within the scope set by law? (3) Did the defendant's negligence in fact cause damage to the plaintiff (`cause in fact')? (4) Should any of the damage to the plaintiff be ascribed in law to the defendant, and, if so, should the defendant be held liable for every kind of *713 damage done to each of plaintiff's interests (`legal cause')?
* * * * * *
The legal cause of the damage in question could be stated as part of the duty inquiry: was the defendant under a duty to protect each of the plaintiff's interests affected against the type of damage that did in fact occur? Such a form of statement is sometimes helpful because it is less likely than `proximate cause' to be interpreted as if it were policy free fact finding; thus, `duty' is more apt to direct attention to the policy issues which determine the extent of the original obligation and its continuance, rather than to the mechanical sequence of events which goes to make up causation in fact. The duty risk approach is most helpful, however, in cases where the only issue is in reality whether the defendant stands in any relationship to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit." (Citations omitted.)
Stewart, Dixilyn-Field, and U.S. Fire contend that Halliburton had a duty to insure that all Dixilyn-Field employees were not standing in a zone of danger when the pipes were pressurized, and that Halliburton failed to advise rig personnel of the dangers presented by the pressurized pipes. We disagree.
Under the Pitre rationale it is important for us in resolving this question to focus our attention on the relationship between Stewart and Halliburton. Immediately, we note that even though Halliburton was performing work on the Dixilyn-Field rig, none of the parties contend that Halliburton contractually obligated itself to take these specific precautions as part of its work assignment. Furthermore, it is essential to remember that Halliburton was testing Dixilyn-Field's pipes which were selected by Dixilyn-Field's own rig personnel. As part of this procedure, the record affirmatively shows that Halliburton's employee on the rig was working alone in a room which did not provide a view of the various levels of the expansive, multi-leveled drilling rig. The record further establishes that the only persons who were aware of the selection of the pipes to be tested and the order of their testing were Dixilyn-Field's supervisory personnel. In light of these factors, and the fact that Stewart was under the direct orders of Dixilyn-Field's supervisors to position himself in the vicinity of the pipes being tested, we cannot say that the trial court erred in its conclusion that Halliburton did not owe Stewart a duty to make certain that Dixilyn-Field personnel were not near pressurized pipes.
Likewise, we cannot say that Halliburton violated any duty to warn Stewart of the dangers posed by the pressurized testing. Stewart's depositional testimony makes it clear that he was aware of the danger presented by the pressurized pipes, and that in light of that knowledge he attempted to position himself in what he considered a safe place. It is axiomatic that you need not warn someone of a danger of which they are aware or should be aware. Cf. Gary v. Dyson Lumber and Supply Co., Inc., 465 So.2d 172 (La.App. 3rd Cir.1985). As pointed out by the trial court, the purpose of the test Dixilyn-Field asked Halliburton to initiate was to enable Dixilyn-Field personnel to discover leaks and defective pipe connections which were not observable by visual inspection. Therefore, we find, as did the trial court, that in the absence of proof that the pressure was not correctly supplied (the evidence preponderates that Jones had only pressurized the pipes to 2000 p.s.i., well below the 5000 p.s.i. ordered by Dixilyn-Field), Halliburton cannot be held to have violated a duty because its testing procedures did in fact uncover a defect in Dixilyn-Field's pipes.
Having reached this conclusion, we need not examine the remaining elements of the duty/risk analysis.
For the foregoing reasons, the trial court's dismissal of Halliburton on a motion for summary judgment is affirmed. Costs of this appeal are assessed equally to Stewart, Dixilyn-Field, and U.S. Fire.
AFFIRMED.
NOTES
[1] LSA-C.C.P. Art. 967 requires that affidavits submitted in connection with motions for summary judgment shall be made on personal knowledge. That portion of an affidavit not based on personal knowledge should not be considered in deciding a motion for summary judgment. Hill v. City of New Orleans, 506 So.2d 627 (La.App. 4th Cir.1987). Statements in affidavits of the opinion or belief of an expert based on his special training and experience do not meet the requirement of personal knowledge. Hidalgo v. General Fire and Casualty Company, 254 So.2d 493 (La.App. 3rd Cir.1971).

In the present case, the affidavit of Frank Nice, a registered professional petroleum engineer, was submitted in opposition to Halliburton's motion for summary judgment. Nice's affidavit was based totally on the depositions of Jean Stewart and Mark Jones. Since Nice's affidavit was not based on his personal knowledge of the facts, it cannot be considered by us.