PENZATO, J.
This is an appeal from a trial court judgment granting a motion for summary judgment filed by Legacy Vulcan, LLC on behalf of Vulcan Chloralkali, LLC (collectively referred to as VC), and dismissing the third-party demands of Texas Brine Company, LLC (Texas Brine) against VC. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
The underlying litigation involves the appearance of a sinkhole near Bayou Come in Assumption Parish, Louisiana, in August 2012, which resulted when the brine production well known as Oxy Geismar Well No. 3 (OG3) collapsed. The plaintiffs owned property in the area, and filed suit against Texas Brine, the operator of OG3, among others, for damages to their property. In response to plaintiffs' suit, Texas Brine filed a third-party demand against VC, alleging that the sinkhole would not have occurred but for VC's negligent decision to increase brine production with reckless disregard to any risks or dangers that may have been attendant to that decision.
*935 The following facts are not in dispute. In 1968, Vulcan Materials Company, now known as Legacy Vulcan, LLC (Vulcan), completed construction of a chlorinated organic chemicals plant in Geismar, Louisiana, which was expanded in the mid-1970's to add a chlorine manufacturing facility. Vulcan contracted with Texas Brine to supply brine to its Geismar plant by pipeline utilizing salt mined by Texas Brine from the Napoleonville Salt Dome located in Assumption Parish, including from OG3, which was drilled in 1982. In June of 1998, VC was formed as a joint venture between Vulcan Chemicals Investment, LLC ("VCI"), a company wholly owned by Vulcan, and Victory Chlor-Alkali and EDS Company, Inc., an affiliate of Mitsui & Co., Ltd., to construct and own a new chemical facility at a site adjacent to Vulcan's Geismar plant. VC contracted with Vulcan to operate the new facility. In addition, VC contracted with Vulcan for Vulcan to supply treated brine to VC's facility, VC had no contractual privity with Texas Brine related to the production or delivery of raw brine mined from the Napoleonville Salt Dome. VC had no control over the upstream drilling, development, maintenance, or operation of any brine mining wells or related production facilities owned and/or operated by Texas Brine. In 2005, the assets of VC were sold to Basic Chemicals Company, LLC, an affiliate of Occidental Chemical Corporation.
The summary judgment evidence indicated the following facts. In April 1998, RE/SPEC Inc. issued a report prepared at Vulcan's request for the purpose of ensuring that there were sufficient brine reserves to supply Vulcan's existing plant as well as the expansion through the formation of VC. The RE/SPEC report indicated that OG3 cavern was "very close to the salt edge." There was deposition testimony as to discussions between Vulcan and Texas Brine regarding the 1998 RE/SPEC report; Texas Brine acknowledged receipt of a final RE/SPEC report in 2005.
VC filed a motion for summary judgment contending that the undisputed evidence established that VC, a manufacturer and distributer of chemical products, had no contractual privity with Texas Brine, had no dealings or direct interaction with Texas Brine, and otherwise neither assumed nor owed any duty to Texas Brine that could give rise to any claim or cause of action. Texas Brine opposed the summary judgment, contending that VC is liable under La. C.C. arts. 660, 667, 2315, 2317, 2317.1, and 2322 for damages resulting from its negligence in requiring or encouraging increased brine production from existing brine caverns in order to meet the brine requirements of its facility.
Following a hearing on January 25, 2017, the trial court granted the summary judgment, concluding that VC owed no legal duty to Texas Brine. The trial court signed a judgment in accordance with that ruling on March 23, 2017, which provided that:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Motion for Partial Summary Judgment filed by Legacy Vulcan, LLC on Behalf of Vulcan Chloralkali, LLC is hereby GRANTED.
Texas Brine appealed, alleging that the trial court erred in granting summary judgment finding that VC owed no legal duty to Texas Brine.
RULE TO SHOW CAUSE AND MOTION TO SUPPLEMENT RECORD
Before we can consider the merits of this appeal, we must address the rule to show cause order issued by this court, ex proprio motu , on October 6, 2017, and the motion to supplement the record on appeal *936 filed by Texas Brine on November 8, 2017. The rule to show cause order noted that the trial court's March 23, 2017 ruling appeared unclear and lacked the specificity required by law; the rule to show cause order further noted that the March 23, 2017 ruling appeared to be a partial judgment lacking the designation of finality required by La. C.C.P. art. 1915(B). The parties were directed to show cause as to whether the appeal should or should not be dismissed for these reasons. In addition, the matter was remanded for the limited purpose of allowing the trial court to sign a judgment addressing the apparent defects in the March 23, 2017 ruling and inviting the trial court to provide a per curiam giving its reasons for its La. C.C.P. art. 1915(B) designation. Finally, the parties were directed that they may request that the appellate record be supplemented with the above-referenced judgment or per curiam on or before November 5, 2017.[1] On December 7, 2017, the rule to show cause order was referred to the panel to which the merits of the appeal were assigned.
On November 8, 2017, Texas Brine filed a motion to supplement the record on appeal with an amended judgment and a per curiam order signed on October 30, 2017. Notice of signing of the per curiam order was mailed on November 2, 2017; notice of signing of the amended judgment was mailed on November 3, 2017. VC did not file an opposition to the motion to supplement the record on appeal, but argued in its appeal brief that Texas Brine failed to comply with this court's order that any request to supplement the record be filed on or before November 5, 2017, and failed to seek an extension of time. Texas Brine contended that it did not receive the trial court's amended judgment and per curiam order until November 7, 2017, and filed them "as soon as [they] were available."
A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. La. C.C.P. art. 1841. It may be interlocutory or final; a judgment that does not determine the merits but only preliminary matters in the course of an action is an interlocutory judgment, whereas a judgment that determines the merits in whole or in part is a final judgment. Id. The appellate jurisdiction of this court extends to final judgments. See La. C.C.P. art. 2083 ; Old Republic Life Ins. Co. v. TransWood Inc., 2016-0552 (La. App. 1 Cir. 6/2/17), 222 So.3d 995, 1002.
Louisiana Code of Civil Procedure article 1918 provides that "[a] final judgment shall be identified as such by appropriate language." It must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Gros v. STMG Lapeyre, LLC, 2014-0848 (La.App. 1 Cir. 5/6/15), 2015 WL 2169680, *2 (unpublished). The trial court's March 23, 2017 judgment lacked the appropriate decretal language disposing of and/or dismissing Texas Brine's third-party claims against VC, which was necessary for a valid final judgment. See Id. at *3. Moreover, the judgment purported to grant a partial summary judgment in favor of VC, but was not designated as a final judgment as required by La. C.C.P. art. 1915(B), which provides that when a court renders a partial summary judgment, the judgment shall not constitute a final judgment unless it is designated as such by the court after an express determination that there is no just reason for delay.
*937 As noted above, the trial court signed an amended judgment on October 30, 2017, which contained the following decretal language:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Motion for Summary Judgment filed by Legacy Vulcan, LLC on Behalf of Vulcan Chloralkali, LLC is hereby GRANTED, dismissing Texas Brine Company, LLC's third-party claims against Vulcan Chloralkali, LLC.
The per curiam order signed on October 30, 2017, certified the judgment as immediately appealable pursuant to La. C.C.P. art. 1915(B).
The October 30, 2017 amended judgment contains the appropriate decretal language to be considered a valid final judgment that addresses all of the jurisdictional issues raised in this court's October 6, 2017 show cause order. It grants VC's motion for summary judgment and dismisses all of Texas Brine's third-party claims against VC.[2] In addition, it removes the erroneous identification of VC's motion for summary judgement as a partial motion for summary judgment, thereby clarifying that it is a partial final judgment pursuant to La. C.C.P. art. 1915(A)(1),[3] making its designation as a final judgment pursuant to La. C.C.P. art. 1915(B) unnecessary.
We recognize and do not condone Texas Brine's failure to request that the appellate record be supplemented on or before November 5, 2017. However, in the interest of judicial economy, we grant the motion to supplement the appellate record with the October 30, 2017 amended judgment and per curiam order. As supplemented, we find that the record on appeal contains a final, appealable judgment over which our appellate jurisdiction extends. Therefore, we recall the rule to show cause order, and maintain the appeal.
LAW AND DISCUSSION
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966A(2).
The burden of proof is on the mover. La. C.C.P. art. 966D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1). If, however, the mover fails in his burden to show an absence *938 of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. Succession of Hickman v. State Through Bd. of Supervisors of Louisiana State Univ. Agric. & Mech. Coll., 2016-1069 (La. App. 1 Cir. 4/12/17), 217 So.3d 1240, 1244.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Reynolds v. Bordelon, 2014-2371 (La. 6/30/15), 172 So.3d 607, 610. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Succession of Hickman, 217 So.3d at 1244.
Texas Brine's claims are based upon VC's alleged negligence in requiring or encouraging increased brine production from existing brine caverns in order to meet the brine requirements of facilities owned by VC. Negligence claims are examined using a duty-risk analysis. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Co. , 2001-2217 (La. 4/3/02), 816 So.2d 270, 275-76.
One of the necessary considerations in the duty-risk analysis is to determine what, if any, duties were owed by the respective parties. Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties. Joseph v. Dickerson, 99-1046 (La. 1/19/00), 754 So.2d 912, 916. Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his claim. Faucheaux v. Terrebonne Consol. Gov., 615 So.2d 289, 292 (La. 1993).
In order to resolve the question of whether VC owed a legal duty to Texas Brine we must focus on the relationship between VC and Texas Brine. VC manufactured and distributed chemical products following its formation in 1998 until the sale of its assets in 2005. VC contracted with Vulcan for Vulcan to supply treated brine to VC's facility. Texas Brine supplied brine to Vulcan by pipeline utilizing salt mined by Texas Brine from the Napoleonville Salt Dome, including from OG3. VC had no contractual privity with Texas Brine related to the production or delivery of raw brine mined from the Napoleonville Salt Dome. VC had no control over the upstream drilling, development, maintenance, or operation of any brine mining wells or related production facilities owned and/or operated by Texas Brine. There is no evidence that VC required brine from OG3.
Texas Brine does not identify any statutory law that imposes upon VC a legal duty under the facts and circumstances of its relationship with Texas Brine. Moreover, the facts of this case, as well as the applicable law, distinguish it from the cases relied upon by Texas Brine. In *939 Istre v. Fidelity Fire & Casualty Ins. Co., 628 So.2d 1229, 1232 (La. App. 3 Cir. 1993), writ denied, 634 So.2d 852 (La. 1994), a construction company was found negligent for an accident occurring as a result of a traffic light being out, despite its lack of privity of contract with the injured party. However, in that case a backhoe operator employed by the construction company was responsible for creating the power outage that affected the traffic light. In Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1017-18 (La. 1993), the Louisiana Supreme Court extended the duty owed by the defendant termite company to give accurate information, beyond the sellers of the property, who had employed the company, to the purchasers. In Barrie, the defendant exercised control over its inspector that issued the termite report. Id.
In contrast, VC had no control over Texas Brine's operations. In such cases, courts have declined to impose a legal duty in tort. See Stewart v. Dixilyn-Field Drilling , 552 So.2d 710, 713 (La. App. 3 Cir. 1989) (no duty was owed by pump manufacturer to employee of drilling rig, where manufacturer had no control over employee); Thornhill v. Black, Sivalls & Bryson, Inc., 385 So.2d 336, 338 (La. App. 1 Cir. 1980), aff'd, 394 So.2d 1189, 1192 (La. 1981) (seller of component parts of conveyor system that had no part in the design, installation or construction of grain elevator and no control over modification to part made by purchaser was not liable for injury to grain elevator employee).
Thus, we find that where, as here, there is no evidence that VC had control over Texas Brine's operation of OG3, or actually required brine from OG3, there is no legal duty owed by VC to Texas Brine. VC, therefore, cannot be liable to Texas Brine, and any argument that the trial court erred in granting summary judgment in favor of VC has no merit.
CONCLUSION
Based on the foregoing, the trial court's dismissal of Vulcan Chloralkali, LLC, on a motion for summary judgment is affirmed. Pursuant to La. C.C.P. art. 2164, we amend the October 30, 2017 judgment to state that the dismissal of Texas Brine's third-party claims is "with prejudice." Costs of this appeal are assessed to plaintiff Texas Brine Company, LLC.
MOTION TO SUPPLEMENT GRANTED; RULE TO SHOW CAUSE ORDER RECALLED; JUDGMENT AFFIRMED AS AMENDED.

We note that November 5, 2017 was a Sunday. Since Sunday was a legal holiday, the delay was extended to the following Monday, November 6, 2017.

We note that the judgment does not dismiss Texas Brine's third-party claims "with prejudice."

Louisiana Code of Civil Procedure article 1915(A)(1) provides that a final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court dismisses the suit as to less than all of the parties, defendants, third-party plaintiffs, third-party defendants, or intervenors.