# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

### 2023 CA 0924

THOMAS JABLONSKI AND MADONNA JABLONSKI

VERSUS

CAPITAL POOLS, L.L.C., ET AL.

Judgment Rendered: **MAY 0 8 2024**

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 696411

Honorable Kelly Balfour, Judge Presiding

\* \* \* \* \* \*

Shermin S. Khan
New Orleans, Louisiana
-and-
Eugene Radcliff
Baton Rouge, Louisiana

Counsel for Plaintiffs/Appellants
Thomas Jablonski and
Madonna Jablonski


Heidi M. Vessel
Zachary, Louisiana
-and-
Morgan J. Wells, Jr.
T. Justin Simpson
Metairie, Louisiana

Counsel for Defendants/Appellees
Capital Pools, L.L.C. and
Benjamin Jackson


Trey Williams
Richard E. King
New Orleans, Louisiana

Counsel for Defendant/Appellee
Colony Insurance Company

\* \* \* \* \* \*

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**McCLENDON, J.**

The plaintiffs appeal the trial court's judgment that granted the defendants' motion for summary judgment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On November 27, 2019, the plaintiffs, Thomas Jablonski and Madonna Jablonski, entered into a contract with the defendant, Capital Pools, L.L.C. (Capital Pools), for the construction of a swimming pool at their residence in Baton Rouge, Louisiana. Capital Pools is a single-member limited liability company owned by the defendant, Benjamin Jackson.

Pursuant to the construction contract, the parties agreed to a price of $41,129.99, with twenty-five percent due at signing and four subsequent installments due at certain points in the construction. The contract also set forth that Capital Pools was responsible for overseeing the construction; that Capital Pools would have general liability and workers compensation insurance in effect during construction; that any questions and concerns were to be emailed to Capital Pools, and Capital Pools would respond within two business days; and that if the contracting party requested any changes to the contract, a detailed change order was required to be emailed to Capital Pools and adjusted payment was to be paid in full by the contracting party before work could continue. Additionally, the contract expressly stated that the agreement only covered work and items listed and agreed upon therein; set forth homeowner responsibility; and provided that the homeowner would be totally liable for all legal fees caused by the failure to make payments. Moreover, the homeowner agreed that all payments were non-refundable once made; however, a refund was permissible if a defect was deemed incurable by an official inspection conducted by a licensed authority.

The contract also provided that, in the event of any lawsuit brought by Capital Pools or the homeowner in which Capital Pools receives a favorable judgment, the homeowner was responsible for all directly resulting losses and that legal fees (including attorney fees) shall be paid by the contracting party. Capital Pools also guaranteed that it would complete the pool as fast as circumstances allowed and that weather, late parts or material deliveries, late payments, and availability of subcontractors could affect the

2

time frame, but promised a fully operational pool with all stated functions when completed.[1] Additionally, pursuant to the contract, Capital Pools warranted all labor work for the pool for one year.

Construction went forward, and the plaintiffs made the first four payments in accordance with the contract. Construction of the pool was almost completed, with the exception of plastering, when the plaintiffs had their attorney send a certified letter, dated February 13, 2020, barring Capital Pools from entering the plaintiffs' property and from finishing the pool construction.

On May 15, 2020, the plaintiffs filed a lengthy petition,[2] seeking damages and asserting claims of fraud, negligence, breach of contract, breach of warranty, conversion, detrimental reliance, and unfair trade practices.[3] On June 9, 2020, the defendants filed an answer to the petition and a reconventional demand, and on July 24, 2020, the plaintiffs filed their answer and affirmative defenses to the reconventional demand.

On September 29, 2022, Capital Pools and Mr. Jackson filed their motion for summary judgment. In their memorandum in support thereof, the defendants asserted that the plaintiffs failed to comply with the provisions of the contract that required all concerns and questions be emailed to Capital Pools and that Capital Pools was never put on notice of any perceived or actual construction deficiencies regarding the work listed in the construction contract. The defendants argued that the plaintiffs instead, without any forewarning, sent to Capital Pools a letter, dated February 13, 2020, which amounted to what the defendants called a cease and desist letter, prohibiting Capital Pools from communicating with the plaintiffs and from entering upon the plaintiffs' property. The defendants maintained that they never received a complaint or grievance as set forth in the contract or by any other means of communication. Therefore, according to the

---

[1] On January 14, 2020, the parties signed a change order that provided additional concrete, deck jets, extra plumbing, upgraded tile, and coping for the total cost of $3,200.00, after the plaintiffs decided to extend the concrete patio around the pool.

[2] The plaintiffs' initial petition contained 126 paragraphs, and their Second Amended and Supplemental Petition contained 146 paragraphs.

[3] Besides Capital Pools and Mr. Jackson, the plaintiffs also named several other defendants: A. Ace Insurance Agency, Inc.; Strickland General Agency of La., Inc.; Johnson & Johnson, Inc.; Colony Insurance Company; Bobby's Electric, Inc.; City of Baton Rouge-East Baton Rouge Parish, Department of Development, Permits, & Inspections Division; and Wesco Insurance Company. All of these defendants, with the exception of Colony Insurance Company, the insurer of Capital Pools, have been dismissed.

defendants, there was no genuine issue of material fact that the plaintiffs breached the construction contract, and the plaintiffs' action should be dismissed.

On November 22, 2022, the plaintiffs filed their memorandum in opposition to the motion for summary judgment, with attached exhibits.[4] On December 5, 2022, the trial court held the hearing on the defendants' motion for summary judgment. The trial court initially heard the defendants' argument that the plaintiffs' opposition to their motion was not timely filed. The following colloquy took place:

| | |
|---|---|
| Ms. Vessel: | On behalf of the defendants we would argue that under Louisiana Civil Code Article 966, the respondents did not file, timely file their opposition to my motion for summary judgment pursuant to 966. It has to be filed within fifteen days prior to the hearing. That fifteenth day fell on a Sunday. It should have been filed immediately that Monday on November 21st. It was instead filed on November 22nd. Of course, the hearing date today is December 5th; therefore, we would object to [the plaintiffs] being able to -- for consideration of their opposition any exhibits and for argument. |
| The court: | All right. Mr. Radcliff, I guess I will allow you to respond to her preliminary matter. Was your opposition filed untimely? |
| Mr. Radcliff: | I don't think that it was, Judge. I'm not sure if it was in a day late. It might have been. I don't think that we were aware. In their reply brief that was not mentioned any where in it, so. |
| The court: | Well, whether in the reply brief or not, the provisions of the Code of Civil Procedure [article] 966 are very clear. And it doesn't have to actually be — any opposition to motion and all documents in support of the opposition shall be filed and served in accordance with article 1313, not less than fifteen days prior to the hearing of the motion. And so, here we are on December the 5th, and my notes show that it was filed on November the 22nd; and certainly that is outside of the timeline. And so, we will provide that under the Code of Civil Procedure Article [966(B)(2)], that it was untimely. |

Counsel for the defendants then asked that the opposition and attached exhibits be stricken from the record. In response, the trial court stated it would not consider any of the documents for the purposes of the motion for summary judgment.

---

[4] We note that the plaintiffs' memorandum in opposition to the motion for summary judgment with the exhibits was almost 700 pages. The exhibits included copies of the petition and amended petition; answers to interrogatories; the depositions of Mr. Jablonski, Mrs. Jablonski, Mr. Jackson, and Bobby Achord; and the affidavits of Mr. Jablonski, Mrs. Jablonski, Kenneth Green, Shermin Khan, Russel Campbell, and Raphael Namer.

After a brief argument by defense counsel as to the merits of the motion for summary judgment, the following exchange occurred:

Mr. Radcliff:     May I take the podium as well, Judge.

Ms. Vessel:      I would object, your Honor.

Mr. Radcliff:     Well, Judge, as we understand it, it's within a judge's discretion –

The court:       Mr. Radcliff, hold on. Please respond to me and not to opposing counsel. Mr. Radcliff, I will say this, is that going through [Article 966(B)(2)] says not less than fifteen, even if the idea would be that it fell on a Sunday and you file it on a Monday, that would be fourteen days, would still be in violation. So the argument whether it'd be due the Friday before or the Monday after doesn't really come into play in this matter because it wasn't even filed until the Tuesday after. And so, in the plain language of [Article] 966, I show that this matter is unopposed and as unopposed do not meet any argument from plaintiffs in opposition of the motion for summary judgment. If my review of the motion for summary judgment that was presented by counsel for Capital Pools, it appears that there was a clear unilateral cancellation of the contract. In such, I will grant the motion for summary judgment as prayed for.

On December 19, 2022, the trial court issued Written Reasons for Judgment, adopting as its reasons the argument provided in the defendants' memorandum in support of the motion for summary judgment. On December 23, 2022, the trial court signed a Final Judgment on Principal Demand, dismissing the plaintiffs' petition, as supplemented and amended, with prejudice. The plaintiffs have appealed.[5]

In their appeal, the plaintiffs argue that the trial court erred in: 1) denying them oral argument and not considering their memorandum in opposition to the motion for summary judgment and its attached exhibits, maintaining that their opposition was timely filed; 2) admitting the entire record into evidence at the motion for summary judgment hearing; and 3) finding that they breached the construction agreement when genuine issues of material fact existed that precluded the granting of summary judgment.

---

[5] The plaintiffs originally applied for supervisory writs. On April 24, 2023, this court granted the writ for the limited purpose of remanding the case to the trial court with instructions to grant the plaintiffs an appeal pursuant to the pleading that notified the trial court of the plaintiffs' intention to seek writs.

## APPLICABLE LAW

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2).

The burden of proof is on the mover. LSA-C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. **Labarre v. Occidental Chemical Company**, 2017-1368 (La.App. 1 Cir. 5/2/18), 250 So.3d 932, 937-38, writ denied, 2018-0912 (La. 9/28/18), 252 So.3d 929.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. **Kasem v. State Farm Fire & Casualty Company**, 2016-0217 (La.App. 1 Cir. 2/10/17), 212 So.3d 6, 13. However, simply

6

showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. **Trichell v. McClure**, 2021-1240 (La.App. 1 Cir. 4/8/22), 341 So.3d 856, 860.

Further, a motion for summary judgment is a contradictory proceeding that requires service of process in accordance with LSA-C.C.P. arts. 1313 and 1314. LSA-C.C.P. art. 966(C)(1)(b). However, a respondent who appears at the hearing on the motion on summary judgment, without raising any objection as to timeliness of service, waives said objection. See **State v. Kee Food, Inc.**, 2017-0127 (La.App. 1 Cir. 9/21/17), 232 So.3d 29, 32, writ denied, 2017-1780 (La. 12/5/17), 231 So.3d 632 (where a respondent to a motion for summary judgment appeared at the hearing, argued the motion, and failed to object to insufficient service of process, said respondent waived the right to object to improper service). See also **Chatman v. Thor Offshore Boat Service, Inc.**, 410 So.2d 784, 785 (La.App. 4 Cir.), writ denied, 414 So.2d 389 (La. 1982) ("a respondent waives service of a motion for summary judgment if he makes a general appearance at the hearing on the motion"); **LeBlanc v. Landry**, 371 So.2d 1276, 1279 (La.App. 3 Cir. 1979) ("[a] respondent ... waives service of a motion for summary judgment if he makes a general appearance at the hearing on the motion").

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that governs the trial court's determination of whether summary judgment is appropriate. **Labarre**, 250 So.3d at 938. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Id**.

## DISCUSSION

At the hearing on the motion for summary judgment, the defendants first argued that the plaintiffs' opposition was filed late and was therefore untimely and should not be

7

considered by the trial court, citing LSA-C.C.P. art. 966(B)(2). At the time that the motion for summary judgment was filed, LSA-C.C.P. art. 966(B)(2)[6] provided:

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> * * *
>
> (2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion.

In **Auricchio v. Harriston**, 2020-01167 (La. 10/10/21), 332 So.3d 660, 663, the supreme court confirmed the clear and unambiguous language of Article 966(B)(2) that an opposition shall be filed within the fifteen-day deadline established by the article. The supreme court pointed out that the legislature, in its 2015 amendment to Article 966(B), removed language that expressly gave the trial court the discretion it previously had and replaced it with mandatory language, indicating the legislature's intent to change the law. Thus, in the absence of consent by the parties, a trial court has no discretion to extend the fifteen-day deadline. **Auricchio**, 332 So.3d at 663.

In this matter, the defendants' motion for summary judgment was filed on September 29, 2022. The plaintiffs' opposition was filed on November 22, 2022, and the hearing on the motion for summary judgment was held on December 5, 2022. The record is devoid of any agreement by the parties to extend the fifteen-day deadline. Therefore, because the plaintiffs' opposition to the motion for summary judgment was filed less than fifteen days prior to the hearing, the trial court lacked the discretion to consider the late-filed opposition and correctly determined that it could not consider the plaintiffs' opposition and exhibits.

However, as part of their first assignment of error, the plaintiffs argue for the first time that they were not served by the sheriff with notice of the hearing until November 23, 2022, and therefore their opposition was timely filed. We recognize that the record shows the plaintiffs were "in fact" not served with notice of the hearing by the sheriff until November 23, 2022. Further, LSA-C.C.P. art. 966(C)(1)(b) provides that, unless otherwise agreed to by all of the parties and the court, notice of the hearing date shall

---

[6] In 2023, LSA-C.C.P. art. 966(B)(2) was amended to reflect changes made to LSA-C.C.P. art. 966(A)(4)(b). See Acts 2023, No. 317, § 1 and LSA-C.C.P. art. 966, Comments-2023.

8

be served not less than thirty days prior to the hearing. However, the record also establishes a total failure by the plaintiffs to raise the issue of the untimely service with the trial court. Accordingly, the trial court did not have an opportunity to address said issue.

As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. **Burniac v. Costner**, 2018-1709 (La.App. 1 Cir. 5/31/19), 277 So.3d 1204, 1210. Under Article V, § 10 of the Louisiana Constitution, courts of appeal have broad supervisory jurisdiction; however, even with such broad power, this court will not act on the merits of a claim not yet acted upon by the lower tribunal. **Id.**; see also Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.[7]

In this matter, at no time prior to or during the hearing did the plaintiffs raise the objection of untimely service regarding the December 5, 2022 hearing date for the motion for summary judgment. Further, one day before the sheriff's service, the plaintiffs filed a 700-page opposition to the motion for summary judgment,[8] which did not contain any objection as to the lack of the thirty-day notice mandated by LSA-C.C.P. art. 966(C)(1)(b). The plaintiffs' counsel also appeared at the hearing and sought to argue in opposition to the merits of the motion without raising any objection as to the timeliness of service. When questioned by the trial court about the timeliness of the opposition, counsel for the plaintiffs made no mention of untimely service, made no request to continue the hearing, and merely stated that their opposition might be untimely.

The plaintiffs' objection regarding the lack of thirty-days-notice was not raised until this appeal, subsequent to the trial court granting the motion for summary judgment. Only then did the plaintiffs aver that they received less than the thirty-day notice as set

---

[7] Rule 1-3 provides:

> The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by La. Const. Art. 5, § 10(B), or as otherwise provided by law. The Courts of Appeal shall review issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice requires otherwise.

[8] The defendants contend that the plaintiffs were served more than thirty days prior to the hearing on the motion for summary judgment via electronic means, attaching to their appellee brief copies of emails indicating same. However, the emails are not part of the record before us, and we do not consider them on appeal.

forth in LSA-C.C.P. art. 966(C)(1)(b). As recognized in **Normand Company v. Abraham**, 176 So.2d 178, 181-82 (La.App. 4 Cir. 1965), to allow the plaintiffs "now to take advantage of a situation created by [their] own silence, intentionally or otherwise, would not only be unjust but a dangerous precedent." Therefore, to the extent that this assignment of error could be viewed as challenging the trial court's ruling on the timeliness of the filing of the opposition to the motion for summary judgment based on the thirty-day notice under LSA-C.C.P. art. 966(C)(1)(b), we find that the plaintiffs waived the right to object to improper service.[9]

In their second assignment of error, the plaintiffs argue that the trial court erred in admitting the entire record into evidence at the hearing on the motion for summary judgment contrary to LSA-C.C.P. art. 966(A)(4). The defendants argue, however, that the trial court did not consider the "entire record", stating that the trial court only admitted what was attached to their motion for summary judgment, and pointed out that the trial court stated that its decision was based on its "review of the motion for summary judgment that was presented by the counsel for Capital Pools."

The record shows that at the hearing on the motion for summary judgment, counsel for the defendants requested the following:

| | |
|---|---|
| Ms. Vessel: | I'd like to offer, file and introduce the entire record into evidence. |
| The court: | All right. I'll let you introduce your exhibits in the record and the evidence as requested. |

Counsel for the plaintiffs made no objection or request for any clarification from the court.[10]

To the extent the defendants attempted to introduce the "entire record" into evidence during the hearing on the motion for summary judgment, only documents

---

[9] The plaintiffs' reliance on this court's decision in **Acadian Properties Northshore, L.L.C. v. Fitzmorris**, 2017-0424 (La.App. 1 Cir. 11/1/17), 234 So.3d 927, 934, is misplaced. Unlike the case before us, counsel for the plaintiff in **Acadian Properties** objected to the defendant's motion for summary judgment on the day of the hearing, arguing that the motion was filed too late, not properly noticed, and not before the court. Id.; see also **Lassere v. State, Dept. of Health & Hospitals, Office of Public Health**, 2000-0306 (La.App. 1 Cir. 3/28/01), 808 So.2d 513, 514-15 (where counsel for the plaintiff appeared at the hearing, one day after being served, and objected to the hearing due to the lack of adequate notice).

[10] The trial court's minute entry reflects that the entire record was introduced into evidence.

actually filed in support of or in opposition to the motion for summary judgment may be considered by the trial court on a motion for summary judgment and parties are not permitted to introduce summary judgment evidence at the hearing. See LSA-C.C.P. art. 966(A)(4) and (D)(2); **Tillman v. Nationwide Mutual Ins. Co.**, 2020-0250 (La.App. 1 Cir. 2/22/21), 321 So.3d 1017, 1022 n.5, writ denied, 2021-00429 (La. 5/25/21), 316 So.3d 446. Accordingly, on our *de novo* review, we will only consider the evidence filed in support of the motion for summary judgment.

We now must determine whether the defendants' supporting documentary evidence sufficiently pointed out the absence of factual support for one or more elements essential to the plaintiffs' claim, action, or defense. In their petition, the plaintiffs asserted multiple allegations against the defendants, including that Mr. Jackson, individually and on behalf of Capital Pools, failed to provide proof of insurance and workers' compensation insurance despite repeated requests to do so; that Mr. Jackson failed to prove he was licensed to construct a residential pool; that Mr. Jackson was untruthful about his qualifications and skills; that Mr. Jackson assured that fiber mesh would be added to the concrete; that unskilled and unlicensed subcontractors were used; and that the defendants failed to construct the pool using good workmanlike practices. The plaintiffs asserted that the defendants fraudulently induced them into entering into the contract and were entitled to a rescission of the contract and damages.

In support of their motion for summary judgment, the defendants submitted a copy of the construction contract; a copy of the deposition of Madonna Jablonski; a copy of the deposition of Thomas Jablonski; a copy of the February 13, 2020 letter from the plaintiffs' attorney barring reentry by the defendants onto the property;[11] a copy of the March 16, 2020 letter from the defendants' counsel in response to the plaintiffs' February 13, 2020 letter; and the affidavit of Benjamin Jackson.

In his affidavit, Mr. Jackson attested, in pertinent part, that the plaintiffs entered into a gunite pool construction contract with Capital Pools on November 27, 2019, agreeing to its terms and conditions; that the plaintiffs failed to direct any deficiencies,

---

[11] We note that the February 13, 2020 letter is three pages, but the copy in the record in support of the motion for summary judgment includes only the first and third page.

concerns, or complaints contained in their petition via email in accordance with the contract; that the plaintiffs failed to submit any changes to the contract subsequent to the signing of the contract, with the exception of the one change order; that the plaintiffs failed to provide any evidence of an alleged defect; that the contract had no provision for the addition of fiber mesh or any other additive to the concrete; that the plaintiffs forwarded the letter, dated February 13, 2020, to Capital Pools alleging rescission of the contract on the grounds of fraud, lack of information, and lack of insurance and ordering Capital Pools not to communicate with the plaintiffs or enter their property, without providing evidence of any alleged defect being deemed incurable by an official inspection; and that on March 25, 2022, without prior notice, the plaintiffs completely demolished the pool and began construction of a new pool.

Mrs. Jablonski testified in her deposition that Mr. Jablonski handled most of the details regarding the construction of the pool, but stated that she and Mr. Jablonski obtained Mr. Jackson's telephone number from a referral by Splash Pools Supply, a local pool store. Mrs. Jablonski testified that she and her husband met with Mr. Jackson at their home on November 27, 2019, and went over the provisions of the contract. Mrs. Jablonski stated that she and her husband asked Mr. Jackson if he was licensed and insured, and Mr. Jackson replied affirmatively. Mrs. Jablonski also testified that Mr. Jackson texted her a picture of his licensing. When asked whether the reason that she and Mr. Jablonski made the decision to cancel their contract with Capital Pools was that they observed cracking and standing water in the concrete patio area, and not the pool, Mrs. Jablonski answered affirmatively. Mrs. Jablonski was also asked whether there was any other issue, and Mrs. Jablonski stated that there was nothing else.

In his deposition, Mr. Jablonski testified that he read the contract thoroughly, but could not answer why there was no mention of any fiber mesh for the concrete in the contract or why it was not in the change order, although he stated that the parties had agreed to it. Mr. Jablonski acknowledged that he and Mrs. Jablonski did not give Mr. Jackson any written communication that there was a problem with the drainage around

12

the pool.[12] Mr. Jablonski also acknowledged that neither he nor his wife sent any text messages to Mr. Jackson that they were unhappy with the quality of the work, although Mr. Jablonski stated that they sent a text message to Mr. Jackson on February 10, 2020, to meet at the house as soon as possible. Mr. Jablonski testified that he wanted to meet Mr. Jackson because of the drainage issues, but acknowledged that he did not state his concerns in the text message.[13]

Under Louisiana law, a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. LSA-C.C. art. 1927. A party having obligations under a contract is liable for the damages caused by his failure to perform a conventional obligation. LSA-C.C. art. 1994. Thus, the essential elements of a breach of contract claim are: (1) the obligor's undertaking of an obligation to perform; (2) the obligor's failure to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee. **State v. Zanders**, 2021-0336 (La.App. 1 Cir. 12/22/21), 339 So.3d 1194, 1200; **Denham Homes, L.L.C. v. Teche Federal Bank**, 2014-1576 (La.App. 1 Cir. 9/18/15), 182 So.3d 108, 119. The burden of proof in an action for breach of contract is on the party claiming rights under the contract, and the existence of the contract and its terms must be proven by a preponderance of the evidence. **Zanders**, 339 So.3d at 1200-01.

Because the plaintiffs would bear the burden of proof at trial, the defendants were not required to negate all essential elements of the plaintiffs' claims, but needed only to point to the absence of factual support for one or more elements essential to the plaintiffs' claims. After our careful *de novo* review of the record, we conclude that the defendants presented sufficient evidence to establish their initial burden of proving an absence of factual support to one or more elements of the plaintiffs' claims.

---

[12] At this point of the construction, Mrs. Jablonski was sending the texts or email messages to Mr. Jackson on behalf of Mr. Jablonski, after an argument and name calling between Mr. Jablonski and Mr. Jackson at the end of January.

[13] This series of texts also included the request for a plaster color for the pool.

The defendants presented evidence in support of their motion for summary judgment that the parties executed a signed contract agreeing to its terms. Nowhere in the contract was it stated that the contract could be terminated due to a failure to disclose insurance coverage or for a delay in the exchange of the insurance information. Further, insurance coverage was verified by Mr. Jackson, which was acknowledged by the plaintiffs. The defendants presented evidence that they were never notified of any alleged deficiencies, concerns, or complaints by email as required by the contract. Also, other than the one change order, Mr. Jackson attested that no changes were submitted to the final plans and the contract did not provide for the addition of fiber mesh or any other additive to the concrete. Moreover, the contract did not require Mr. Jackson to disclose the subcontractors utilized by Capital Pools, as the contract expressly provides that "all subcontractors shall be exclusively interviewed and approved by Capital Pools, L.L.C." Further, with regard to the plaintiffs' remaining claims, there was no evidence that the defendants were made aware of any problems with the pool construction. The evidence did not show any failure by the defendants to comply with the provisions of the contract. Therefore, because the defendants' motion was properly supported, and because we cannot consider the plaintiffs' untimely opposition and exhibits, the trial court did not err in granting the motion for summary judgment.

## CONCLUSION

For the above reasons, we affirm the December 23, 2022 judgment of the trial court, granting summary judgment in favor of the defendants, Capital Pools, L.L.C. and Benjamin Jackson, and dismissing with prejudice all of the claims of the plaintiffs, Thomas Jablonski and Madonna Jablonski. All costs of this appeal are assessed to the plaintiffs, Thomas Jablonski and Madonna Jablonski.

**AFFIRMED.**

14

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

DOCKET NUMBER

THOMAS JABLONSKI AND
MADONNA JABLONSKI

VERSUS

CAPITAL POOLS, L.L.C., ET AL.

2023 CA 0924

**MILLER, J., dissenting.**

I respectfully dissent from the majority's opinion herein.

The majority concludes that Plaintiffs' opposition was filed late even though it was filed before Plaintiffs were served. Plaintiffs were served twelve days before the hearing, which timeframe included two weekends and the Thanksgiving holiday. The required notice of a summary judgment hearing is to be served "not less than thirty days prior to the hearing." La. C.C.P. art. 966(C)(1)(b). When Plaintiffs requested that they be allowed to argue, and their opposition be considered, they implicated the truncated timeframe within which they were required to file their opposition and prepare for the hearing. Their request to argue was denied and their opposition was not considered.

This court has noted that absent a waiver, if the required notice is not provided, the district court is procedurally barred from acting on the motion. See Acadian Properties Northshore, L.L.C. v. Fitzmorris, 2017-0424 (La. App. 1st Cir. 11/1/17), 234 So. 3d 927, 934; Lassere v. State, Department of Health & Hospitals, Office of Public Health, 2000-0306 (La. App. 1st Cir. 3/28/01), 808 So. 2d 513, 516-518. The majority notes that a party complaining of insufficient service must file a declinatory exception and request a ruling on the exception prior to submitting to a

1

hearing on the merits of the motion for summary judgment; otherwise, if they appear **and argue** the merits of a motion for summary judgment, they waive the right to object to improper service. State v. Kee Food, Inc., 2017-0127 (La. App. 1st Cir. 9/21/17), 232 So. 3d 29, 32, writ denied, 2017-1780 (La. 12/5/17), 231 So. 3d 632.

Here, Plaintiffs were not allowed to argue, and their right to file an exception within the relevant timeframe is of dubious value. Uniform Rules for Louisiana District courts, Rule 9.8(c) provides that "no hearing on an exception or motion will be scheduled until at least fifteen calendar days after filing." Again, because Plaintiffs were not served with notice of the hearing on the motion for summary judgment until November 23, 2022 - a mere twelve days before the hearing - Plaintiffs were not afforded an adequate opportunity to file an exception and request a ruling on same prior to submitting to the hearing on the merits of the motion for summary judgment. See Kee Food, Inc., 232 So. 3d at 32. Thus, under the circumstances presented herein, I would determine that Plaintiffs did not waive their right to object.

I believe that once the movers maintained their opposition to the late filing, there was no path forward in conformity with the La. C.C.P. art. 966 guidelines. Therefore, due to the late service, Plaintiffs were forced into a Procrustean bed of summary judgment deadlines within which they could not fit. See Auricchio v. Harriston, 2020-01167 (La. 10/10/21), 332 So. 3d 660, 664, (Hughes J., concurring). I believe the motion for summary judgment should be denied on procedural grounds.